# Richmond.

## BUCKNER v. METZ AND ALS.

### February 1st, 1883.

APPELLATE COURT—*Jurisdiction*—*Case at bar.*—B. has judgment against M. for $1,689.99. M. has only one tract of land, containing eighteen and a quarter acres, and worth $91.25. After the judgment M. makes his deed, setting apart this land as his homestead. The bond, whereon the judgment was founded, contained no waiver of homestead, and was not for the price of this land. Then M. conveyed this and for value to P. B. brought his bill in chancery to enforce the lien of his judgment on this land. Court below dismissed the bill. On appeal;

HELD:

1. To give this court jurisdiction of this case, under constitution, article six, section two, "the matter·in controversy"—"that for which the suit is brought"—"the subject of the litigation, and upon which the issue is joined," must be either of the value of $500, exclusive of costs, or "concerning the title or boundaries of land."

2. Here the suit was brought to enforce the lien of the judgment upon the eighteen and a quarter acres owned by M. at the recovery of the judgment, but subsequently conveyed to P. The whole aim, object and scope of the suit is the value of the land, by payment whereof P. may discharge the land from the judgment. Its value, ascertained by the proceedings in the cause, is less than $500.

3. The matter in controversy, as concerns the appellate jurisdiction of this court, is the value of the land, and that being less than $500, this court has no jurisdiction.

4. This is not a suit *for the land*, and no such controversy "concerning the title or boundaries of land," as would give this court jurisdiction, can arise.

Appeal from decree of circuit court of Louisa county in the chancery cause of Baldwin M. Buckner, complainant, against John A. Metz, and Elizabeth, his wife, and Philip Metz, defendants. On 26th March, 1875, Buckner got judgment in said court against John A. Metz for $1,689.99. This suit was brought to enforce the lien of this judgment on eighteen and a quarter acres of land, whereof John A. Metz was seized at the date of the judgment, but which he subsequently set apart as his homestead, and which he and his wife on 4th August, 1876, conveyed to Philip Metz. Defendants resisted the relief prayed for, on the ground that the land having been set aside as a homestead, was protected by law from the complainant's claim, and that this protection followed the land into the hands of Philip Metz, the grantee. Complainant met this defence with the reply, that his judgment embraced the purchase money of the land, which he contended had never been paid to him; and that the land having been aliened by John A. Metz and wife, and being no longer their homestead, had become liable to the complainant's judgment; and that the homestead had become transferred to the purchase money received by John from Philip for the land. The court below decided that the price of the eighteen and a quarter acres had been paid, and that the alienation of the land did not divest it of the estate of homestead of John A. Metz therein, so as to make it liable to the judgment in the hands of the grantee, and that the homestead deed was a bar at present to the enforcement of the lien of the judgment thereon, and dismissed the bill at the complainant's costs. From that decree the said Buckner obtained an appeal to this court. The remaining facts are stated in the opinion.

*Guy & Gilliam*, for the appellant.

1. As to the jurisdiction of the appellate court, it is sufficient to say that the judgment debt which appellant seeks to enforce is $1,689.99, besides interest and costs.

2. The appellant's judgment was a lien, as soon as rendered, on the land of Metz.

Metz *subsequently* claimed the land as homestead. If such subsequent claim could avail him at all, it could not divest the existing lien, but only at farthest arrest and suspend the creditor's right to a present enforcement of it.

Now we claim—First, that when Metz afterwards sold and conveyed the land, it ceased to be his homestead, and became at once liable to sale for payment of appellant's judgment. See *Richardson* v. *Butler*, 1 Va. Law Journal, 120, and case there cited.·

And we claim—Second, that even if for the purposes of homestead, the present right to subject the land to sale was taken away, yet the debtor's estate thus protected was only a life estate; and there was still left in the land an estate *in the nature of a reversion,* which was clearly liable to the judgment, and should have been sold for its payment.

The plaintiff's judgment, under the Virginia statute, was a legal lien, independent of any right to levy, on the debtor's whole real estate.

Concede now that the homestead claim is paramount, yet what reason can there be against enforcing the lien and selling the land *subject to the homestead rights,* or selling the whole interest and estate of the judgment debtor in the land, except the estate of homestead vested in him and his wife and· infant children. In other words, selling that estate of the debtor which, at the termination of the homestead, passes, in the language of the statute, "subject to all the debts of the said householder or head of a family."

It is analogous to the case of a remainder or reversion, or the case of land, subject to a prior charge or encumbrance, not susceptible of being removed or provided for in money. In such cases there would be no difficulty.

And why should the creditor be delayed in getting his money? the debtor is not hurt; he is allowed the enjoyment of his home-

stead; it is all he can be entitled to. Why should he even de-
sire to obstruct the creditor any further?

The case of *Black* v. *Curran,* 14 Wall. 463, bears on this
point.

But appellant claims that the purchase money of the land in
question was embraced in his judgment, and that this precluded
the defence of homestead, set up by defendants.

On the other hand, the defendants claim, and the court be-
low held, that this purchase money had been paid.

It is not pretended or claimed by the defendants that any
*actual payment of any money* on account of the Gunnel land—
the land in question—was ever at any time made by Metz to
Buckner; but only that the transaction between them amounted
to, or was equivalent to, payment, and should be treated as such.

The facts, which are fairly stated by Mr. Fowler in his note,
appear in the record in a deposition which had been taken in
another case, but was read in this case by consent of parties.

Analyzed closely, the facts show this: Buckner held Metz's
bonds for certain land (other than the Gunnel land) which, fall-
ing short in quantity, the amount of money called for by the
bonds had to be abated.

But Metz also owed Buckner for the Gunnel land, which was
not embraced in the bonds.

Buckner sued Metz on the said bonds.

When judgment went in this suit, it was by agreement of
parties given for the real amount due by Metz to Buckner on the
whole of their transactions.

The amount of money for which the judgment was given was
ascertained by abating or deducting from the bonds the proper
amount for deficit or shortage in the lands represented by the
bonds, and then adding the amount agreed on to be paid for
the Gunnel land.

In actual figures these were the figures by which the result
was reached:

·Buckner sued on two bonds, each for the sum of
$1,878.33. . . . . . . . . $3,756 66
The land for which these bonds were given fell short
thirty-five and a quarter acres, and the abatement
required by the contract of purchase was $12 per
acre, so the amount to be abated was, . . . 423 00
The Gunnel land was eighteen and a quarter acres,
and Metz was, by contract, to pay for this land
$20 per acre, or, . . . . . . . 365 00
On this basis, the true abatement to have been made
from the bonds was the difference between the two
last named sums, or, . . . . . . 58 00
But Metz set up some claim to have the Gunnel
land charged to him at only $12 per acre, and this
difference of $8 per acre, it was finally agreed
should *be split.* In other words, in the final settle-
ment, one-half of $8, viz: $4 per acre, was agreed
to be knocked off from the contract price of the
Gunnel land, and there being eighteen and a quar-
ter acres, $4 per acre came to, . . . . 73 00
So this amount was added in Metz's favor to the
$58 above mentioned, and made the sum of, . 131 00
There was also added $1.50, probably, it is said, on
account of interest (and doubtless this suggestion
is true, because the Gunnel land money enter-
ing into the judgment was made to carry interest
from January 1, 1871, while a part of it, by
original contract, was to carry interest only from
March 1, 1871, and Metz, therefore, would have
been otherwise charged with two months too
much interest on it), which $1.50 increased the
$131 to, . . . . . . . . 132 50

Accordingly Metz was, by agreement of parties at the time of
the judgment, credited with $132.50 on the judgment.

Now, if the Gunnel land had not been taken into considera-
tion and added into the judgment, Metz would have been
credited with $423, the whole amount of shortage or deficit.

Why then is the credit on the judgment only $132.50 ?

The answer is plain. Because the unpaid purchase money
of the Gunnel land is merged and embraced in the judgment,
and swelled the amount of it by diminishing the credit on it.

*Thomas M. Fowler,* and *H. T. Wickham,* for the appellees.

*Points.*—I. The court has no jurisdiction:—1st. Because the
matter in controversy is not pecuniary, and is not one of those
not pecuniary controversies mentioned in the Virginia constitu-
tion, giving and enlarging jurisdiction of the court of ap-
peals; and 2nd, because the matter in controversy, if pecuniary,
is less than $500, exclusive of costs.

II. Buckner's judgment was not a lien on J. A. Metz's home-
stead, either before or after Metz alienated it.

III. The eighteen and a quarter acres of land have been paid
for by J. A. Metz, or, at least, Buckner is estopped to deny it.

I. The supreme court of appeals has no jurisdiction in this
matter.

The pretension of the appellant is that he has a lien on the
eighteen and a quarter acres, and consequently a right to have
it subjected to the payment of his judgment. His is not a pro-
ceeding *in personam* as to Philip Metz; it is merely a proceed-
ing *ad rem,* and is not a controversy that is merely pecuniary,
or pecuniary at all. It is a mere declaration of a right of lien,
and the consequent right to subject the property to the lien.
There is no denial of the defendants that the judgment is cor-
rect, and that the said balance is due by J. A. Metz to Buckner,
but the controversy is that it is not a lien on the property.
This, then, not being a case where the matter in controversy is
pecuniary, and not coming within the exceptions enumerated in

the constitution, which extends the appellate jurisdiction of the court to matters not merely pecuniary, though the matter in controversy be less than $500, exclusive of costs, we say the court has no jurisdiction in this case. The constitution says the court shall have appellate jurisdiction only, except in cases of *habeas corpus, mandamus* and prohibition. So it will be seen that the court has neither appellate nor original jurisdiction in this matter. See constitution, article six, section second. It would seem from the statute, Virginia Code, 1873, section 2, chapter 178, pp. 11, 36 and 37, that the court would have jurisdiction in this case, under that part of the section which attempts to give jurisdiction where there is drawn in question "some matter not merely pecuniary;" but the statute cannot enlarge the exceptions in the constitution, which give jurisdiction in the matters not pecuniary. See Barton's Law Practice, pp. 21, 24 and 25, and *Neal et al.* v. *Commonwealth,* 21st Gratt. 515.

But it may be urged that the court has jurisdiction because it comes within that part of the exceptions in the constitution which gives jurisdiction in "controversies concerning titles of lands." We say that this case does not come within said exception; that the title to the land is not directly the subject of controversy, but only incidentally; and this being the case, this case does not come within the exception, and the court has no jurisdiction. The case of *Umbarger and wife* v. *Watts, &c.,* 25th Gratt. 167, 177, is directly in point; said case runs almost on all fours with this; there the judgment creditor sought to subject lands which had been alienated, by the judgment debtor, to the payment of the judgment. The question was, whether the land was liable to the judgment, and the court expressly decided on pages 177, 8 and 9, that it was not a controversy concerning title to lands, and consequently it had no jurisdiction. See Barton's Law Practice, pp. 24–25. We think these authorities are decisive, that this is not a controversy concerning title to land. We think we have shown that this is not

a pecuniary controversy. But if it is a pecuniary controversy, then we say that the matter in controversy is the value of the eighteen and a quarter acres, and not the amount of the judgment; if it is a pecuniary controversy, the pecuniary character is evolved thus; the appellant asserts his lien on the property, and the consequent right to have it sold to pay his debt, which is tantamount to demanding of Philip Metz the value of the land, or that it shall be sold, in case of his default, in paying the value of it. Now, we say, admitting that the matter in controversy is pecuniary, and is the value of the land, yet this court has no jurisdiction, as the record shows that the value of the land is less than $500. Buckner sold it to J. A. Metz, in 1871, for $365 ; J. A. Metz sold it to Philip Metz for $182.50, in 1876, and Commissioner Murray's report, dated November 10, 1877, and filed November 23, 1877, puts its value at not more than $5 per acre, or $91.25. See pp. 6, 17–25, printed record.

II. We say that this judgment is not a lien on the eighteen and a quarter acres of land, and could not be, because J. A. Metz claimed his homestead against it, and there was no waiver of homestead by Metz in the bonds upon which the judgment was rendered, or by any instrument. A judgment cannot be a lien on property claimed as a homestead, we think is amply shown by these provisions of the statute :

. .1st. It provides that a homestead may be sold by the husband and wife, and the proceeds invested in another homestead, and the purchaser shall not be required to see to the application of the purchase money. Now if, as soon as a sale of homestead by the householder and his wife is effected, the lien of the judgment attaches to the property, or the barrier to the enforcement of it out of the property is broken down, the result would be that the property in which the homestead had been claimed would become liable to the judgment debt, and the judgment, if as great or greater than the value of homestead property, would take all of it from the vendee. Upon the property being

taken from the vendee in this way, we think the vendee would have a right, had he paid the purchase price for the property to the householder, and he invested it in another homestead, to enforce a refund of the money he had paid for the old homestead property out of the new homestead; for the vendee's claim against the new homestead would be a demand for a debt for the purchase price of the new homestead, which had been furnished by the vendee. If this be right, then if a householder should sell the property in which he had claimed his homestead, he would, to all practical purposes, thereby destroy his homestead, if there was a judgment on it to its full value. We do not think that the law designed any such thing; we do not believe it meant to say to the householder you may sell your homestead; but if you shall, you may thereby destroy it. If it meant that it would not have said that the money may be invested in a new homestead; if the judgment lien attaches to the homestead, then no sale of homestead property could be effected without the consent of the judgment creditor, or without a decree of court in a suit in which the judgment creditor was a party; and, in fact, we doubt very much whether, under any circumstances, if the judgment lien attaches to the property, a court of chancery would have the right to divest the lien on the old homestead and transfer it to a new homestead without the consent of the creditor. To hold that a judgment is a lien upon the homestead property, in its operation, tends to tie up property and prevent its free alienation, which is contrary to the whole policy of the law.

A lien is defined to be "a hold or claim which one person has upon the property of another as security for some debt or charge." See Bur. Law Dic. (Lien); and our statute says a judgment shall be a lien ("hold or claim") on all the real estate of or to which the debtor shall be possessed or entitled, as security for the payment of the same. We do not think that the judgment can be a lien on the property claimed as a homestead during the existence of the homestead, because there would be

presented this anomaly: a creditor having a lien on property, and yet not have the right to enforce it. We say Buckner's judgment was not a lien on the eighteen and a quarter acres while J. A. Metz owned and held it as his homestead, and that not being a lien during said time, it could not be a lien after he had conveyed it to Philip Metz, because *eo instanti* he conveyed it, he ceased to be possessed of or entitled to the eighteen and a quarter acres, and consequently he had no interest after alienation of the same upon which the judgment could attach, he being neither "possessed of or entitled to" same. The seventh section, chapter 183, Virginia Code 1873, allows sale of homestead.

2nd. In section 6, chapter 183, Virginia Code 1873, page 1171, the statute provides that where a creditor is seeking to enforce payment of debts out of real estate, and the householder claims his homestead in real estate of greater value than $2,000.00, and homestead cannot be set apart to him in kind, the whole land shall be sold, and out of the proceeds of sale there shall be invested the amount to which the householder may be entitled as a homestead, in a homestead, and the *surplus* shall be applied to the payment of the debt for the satisfaction of which the land was ordered to be sold.

It will be observed that the statute only provides that the surplus of the sale, over and above the homestead, shall be applied to the debt of the householder, and nothing is said about a lien of the judgment for the debt being continued in the new homestead.

3d. The statute in fourteenth section of said chapter provides that if a plaintiff in an execution, &c., shall be dissatisfied with the valuation of the property selected by the householder for a homestead, he may apply to the judge of the county court and cause the property of the householder to be appraised, and if the property is found to exceed what the householder is entitled to hold as exempt, *the surplus shall be liable* to the execution, &c. If the portion of the personal property set aside to the

householder for a homestead was intended to be held liable for the execution at any time or in any way, the statute would have so declared, and we may well infer that it did not intend that the execution should be a lien on the property, and we may well argue that if a homestead of personal property is not subject to a lien of an execution, a homestead of real estate is not subject to a lien of a judgment.

4th. The statute in sections 16 and 17, chapter 183, Virginia Code 1873, provides for a debtor taking the benefit of his homestead where a creditor is seeking to enforce the lien for his debt, and where he has not theretofore claimed his homestead exemption, saying that the county court may appoint appraisers to ascertain the value of the property claimed as exempt by the debtor, and that should it be ascertained that he has claimed more than he is entitled to, that then the creditor may enforce his lien on the residue of the property free from the homestead exemption. It will be observed that there is nothing here said about the property that is allowed the debtor for a homestead being subject to a lien which might in future, at the determination of the homestead, be enforced.

5th. The statute in section first of said chapter says that the householder shall be entitled "to hold, exempt from levy, seizure, garnisheeing, or sale under any execution, order or other process issued on any demand for any debt heretofore or hereafter contracted, his real and personal property * * * * * to the value of not exceeding $2,000." This provision is very similar to that of section 33, chapter 49, Virginia Code 1873, which says in case of husband, who is a housekeeper and head of a family, "there shall be exempt from distress or levy the following articles." We suppose it is universally admitted that no execution or distress warrant could operate as a lien on property exempt under said thirty-third section, and we think that if under said thirty-third section an execution could not be a lien on the property exempted thereunder equally so, will an execution or judgment not be

a lien on property exempt for homestead under section 1st, chapter 183, Virginia Code 1873.

There is very little difference in the phraseology. It seems to us that the right to "hold, exempt from levy or sale" property, is the same thing as that the property "shall be exempted from levy or distress."

Judge Staples in delivering the opinion of the court in the case of *Boynton and others* v. *McNeal, &c.,* 31st Grattan, 460, adopts the following language from Thompson on Homesteads and Exemptions: "Certainly it would be very inconsistent to say that a debtor's disposal of his property, and which property, so far as his creditor or his claims are concerned, may be said to have *no existence at all,* is a fraud upon the creditor. No creditor can be, in legal contemplation, defrauded by a mere conveyance made by his debtor of any of his ·property which said creditor has no right by law to appropriate, or even touch, by any civil process. A conveyance of a homestead by the husband to the wife cannot be held fraudulent as to creditors, for the reason, that being exempt, it was no more beyond their reach than before." The learned judge says that the reasoning in Thompson, to his mind, is not only just and sound, but absolutely unanswerable; and on page 461 of said opinion he uses this language: "Take, for example, the property exempt from levy and distress, under what is known as the poor debtor's law, it will scarcely be maintained that if a debtor should make a fraudulent deed conveying this property along with other property subject to his debts, he would thereby forfeit his claim to exemption as against creditors." Thus it will be seen that the learned judge held that property exempt for a homestead is equally and effectually as exempt from the liens of judgments, as property exempt under the poor debtor's law is exempt from levy of a *fieri facias.*

The cases of *Boynton, &c.* v. *McNeal,* 31 Gratt. 456, and *Shipe, Cloud, &c.* ·v. *Repass, &c.,* 28 Gratt. 716, were cases where the householders made fraudulent deeds of their homesteads,

and the judgment lien creditors attacked the conveyances on the grounds of fraud, and succeeded in establishing fraud, yet the court of appeals decided after setting aside the deeds as fraudulent, that still the householder could avail himself of his homestead in the property. The argument was, that the fraudulent conveyance does not enlarge the right of creditors, but leaves them to enforce the right, they would have had, if no such conveyance had been made or expressed in another way; that the interest which the creditor has in the property, by virtue of his lien, is a derivative interest, proceeding from the debtor, and dependent upon his title; that hence the creditor cannot acquire a right under the debtor's title, and at the same time impeach that title, and that he cannot sell under his execution the debtor's title, and at the same time deny the debtor's right of a homestead, on the ground that the latter has no title.

In this case, equally as in the cases of the fraudulent deeds, we say that Buckner is attempting to subject J. A. Metz's title in the land to the payment of his debt, and that he cannot sell under his judgment J. A. Metz's title, and at the same time deny J. A. Metz's right of homestead, on the ground that the latter has no title. We would here say that we have gotten much light on the subject of judgment liens on homestead from the able review of *Richardson* v. *Butler,* by J. M. O., of Leesburg, Virginia, found in Law Journal .1877, page 261, *et seq.*

III. It may be urged that Buckner's judgment is a lien on the eighteen and a quarter acres of land, to the extent of what is due on the purchase price of the same. We do not think that the judgment can be considered as rendered for the purchase price of the eighteen and a quarter acres. The action in which the judgment was rendered was an action on the two bonds given for the larger tract of land, and no suit was ever brought on the contract under .seal, by which J. A. Metz purchased of Buckner the eighteen and a quarter acres of land. No bonds or notes were ever given for the purchase money. It is true that the purchase price of the eighteen and a quarter acres

of land was brought into the settlement when the judgment was rendered, yet we do not think this amounts to a judgment for the purchase price of the eighteen and a quarter acres. If it is a judgment for the purchase price, how much of that judgment is the purchase price of the eighteen and a quarter acres is the question? We say that the purchase price of the eighteen and a quarter acres, for which the judgment went, did not amount to $500, either on the 23d day of March, 1878, the time when the decree was rendered in this case, from which there is an appeal, or on the 1st day of March, 1880, the time when the appeal was allowed. The record shows that the purchase price of the Gunnel tract of land, the said eighteen and a quarter acres, at the time the judgment was rendered, in order to get the judgment for said purchase price, was put at $290.50. The following statement shows what was said purchase price at the said times:

| | | |
|---|---|---|
| Purchase price for eighteen and a quarter acres, | . | $290 50 |
| Cost of judgment, . . . . | . | 7 90 |
| | | $298 40 |
| Interest from January 1st, 1871, to March 23, 1878, when decree was entered, . .. . | . | $139 25 |
| | | $437 65 |
| Interest on $298.40 from March 23, 1878, to first March, 1880, when appeal allowed, . | . | $ 34 71 |
| | | $472 36 |

It will be seen from the above calculation, that on the twenty-third March, 1878, the judgment for the purchase price of the eighteen and a quarter acres, including cost (which ought not to be included) and principal and interest on same amounted to $437.65. March 23, 1878, is the proper time for the measurement of the jurisdiction of the court of appeals in this case, and

Argument—Opinion.

this being the case, it will be seen that the matter in contro-
versy did not then amount to $500, and consequently the court
has no jurisdiction. (See *Gage* v. *Crockett*, 27 Grat. 753; *Camp-
bell* v. *Smith*, 32 Grat. 288, and *Harman* v. *City of Lynchburg*,
33d Grat. 37.) It will also be seen from said calculation,
that on the day the appeal was allowed, March 1st, 1880,
the judgment for the purchase price of the eighteen and a
quarter acres, including cost, principal and interest, amounted
to only $472.36; so even if that was the proper time to test the
jurisdiction of the court, still the amount was not sufficient to
give jurisdiction.

That in ascertaining jurisdiction, all costs in every court
should be excluded (see Barton's Law Pr., p. 21, section 19),
and that the matter in controversy must be $500 at the date of
decree from which appeals is taken. (See Id., p. 22.)

We think that the circuit court and Commissioner Murray
were right in deciding that the eighteen and a quarter acres of
land were paid for in the transaction in which judgment was
permitted to go for Buckner (see printed record, pages sixteen to
eighteen), and whether this is so or not, that Buckner is estopped
by his deed, conveying to J. A. Metz the eighteen and a quarter
acres, from saying as far as Philip Metz is concerned, that the
purchase price of the eighteen and a quarter acres had not been
paid, and was represented by said judgment. There is nothing
in the record of this case to show, that in the record in the
action at law, in which the judgment was rendered, that the
judgment was rendered (if it was) for the purchase price of the
eighteen and a quarter acres, and as a matter of fact, there is
nothing in that record tending to show the judgment was for
said purchase price.

FAUNTLEROY, J., delivered the opinion of the court.

This is an appeal from a final decree of the circuit court of
Louisa county rendered at the March term, 1878, in a chancery

cause in said court then depending, in which Baldwin M. Buckner, the appellant here, was complainant, and John A. Metz and Elizabeth, his wife, and Philip Metz were defendants. A transcript of the record of the cause shows the following material facts:

On March 8th, 1871, the appellant, B. M. Buckner sold to John A. Metz, two separate and distinct lots or parcels of land, by separate and distinct contracts, for the price of twenty dollars per acre; one of the tracts was estimated to contain four hundred and seventy-two acres, the other eighteen and a quarter acres; and it was agreed that the tract estimated to contain four hundred and seventy-two acres should be surveyed, and if it fell short of four hundred and seventy-two acres, then there should be an abatement of the purchase money, at the rate of $12 per acre for the deficiency of acres. On the survey, it fell short thirty-five and a quarter acres. John A. Metz paid over $5,000 on this four hundred and seventy-two acre tract, and executed and delivered to B. M. Buckner his two bonds for the balance of the purchase money, $3,756.66⅔, each bond for $1,878.33⅓, with interest from January 1, 1871, till paid. These two purchase-money bonds were secured by a deed of trust upon the four hundred and seventy-two acre tract. B. M. Buckner sued John A. Metz, on these two bonds, in the circuit court of Louisa county. The land for which these bonds were given fell short, upon survey, thirty-five and a quarter acres, and the abatement required by the contract of purchase, at $12 per acre, was $423.

But John A. Metz owed to B. M. Buckner for the eighteen and a quarter acre tract, known as the "Gunnel tract," at $20 per acre, $365.

This became the subject of negotiations by which B. M. Buckner agreed to take less for the eighteen and a quarter acre "Gunnel" tract than the contract price, and credited Metz's purchase-money bonds, in suit, by $132.50. Whereupon, and in consideration of which, Metz agreed to let judgment go; and

judgment did go against Metz, at the March term, 1875, for the sum of $3,756.66⅔ with interest from January 1, 1871, and the costs, $7.96, subject to the credit of $132.50 as aforesaid.

The four hundred and seventy-two acre tract, ascertained by survey to contain four hundred and thirty-six and three-quarter acres, was sold, under the deed of trust to secure B. M. Buckner, June 16, 1876, and was bought in by B. M. Buckner for eight dollars per acre; and, after applying the net proceeds of sale to Buckner's judgment, there was still a balance due by Metz on the judgment, of $1,689.99 as of June 16, 1876.

Guy, commissioner, and B. M. Buckner and wife, by deed dated February 10, 1873, conveyed the eighteen and a quarter acres "Gunnel" land, to John A. Metz; Buckner and wife conveying with general warranty of title, and by a fee simple deed which was delivered to John A. Metz in 1873.

John A. Metz and wife, on 13th day of December, 1876, conveyed the eighteen and a quarter acre tract, with general warranty of title, to Philip Metz, for the price of $10 per acre, then or theretofore paid; and said deed was duly recorded 26th December, 1876.

B. M. Buckner sued out an execution on his judgment which was levied on the personal effects of John A. Metz; and thereupon said Metz filed his homestead inventory under chapter 183 of the Code of Virginia, 1873; and included in the said inventory this eighteen and a quarter acre Gunnel tract.

In 1877, B. M. Buckner filed his bill in chancery in the circuit court of Louisa county against John A. Metz and wife and Philip Metz, to subject to the payment of his judgment against John A. Metz, the said eighteen and a quarter acre "Gunnel" tract of land, then held by Philip Metz. In this suit, at the March term, 1878, the circuit court of Louisa, made a final decree dismissing the bill of the complainant, B. M. Buckner, with costs: to this decree an appeal was allowed and supersedeas awarded by this court.

In his petition, Buckner, the appellant here, assigns that the

circuit court of Louisa erred, in holding that the purchase-money for the "Gunnel" eighteen and a quarter acre tract had been fully paid by John A. Metz to Buckner, in and by the transaction of set-off and abatement for deficiency in the number of acres found by survey in the larger tract of land, before the rendition of the judgment obtained by Buckner against Metz, in March, 1875, and that as the said judgment was founded upon bonds which were not given for this eighteen and a quarter acre tract, and which did not contain any waiver of homestead exemption, the said eighteen and a quarter acre "Gunnel" tract was subject to the homestead exemption of John A. Metz, in the hands of Philip Metz, his vendee, for value.

Now, in the review of this action of the circuit court of Louisa, which this court is called to make, we are met at the threshold with the question of the *jurisdiction of this court*, in the premises.

To give this court jurisdiction of this case under the second section of article six of the constitution of Virginia, " the matter in controversy"—"that for which the suit is brought"— " the subject of the litigation, and upon which the issue is joined," must be, either of the value of $500, exclusive of costs, or "concerning the title or boundaries of land." See 25 Gratt. 167; 27 Gratt. 753; 32 Gratt. 288; 33 Gratt. 37; 2 Call, 497.

In the case before us, the suit was brought by B. M. Buckner, the appellant here, " to enforce (as he says himself, in his petition) the lien of his judgment upon a tract of land consisting of eighteen and a quarter acres, of which John A. Metz was seized at the time of the recovery of said judgment, but which he and his wife subsequently conveyed to Philip Metz." And the learned counsel for the appellant, Buckner, in his brief, filed with the record, says: " As to the jurisdiction of the appellate court, it is sufficient to say that the judgment debt which appellant seeks to enforce, is $1,689.99, besides interest and costs."

The suit was not *brought for the land*, but to enforce satisfaction of a judgment lien against the land; the eighteen and a quarter acres of land being the fund out of which it is sought to enforce the payment; and the whole object, aim and scope of the suit, is the value of the eighteen and a quarter acres of land, by the payment of which the party may discharge himself and the land from the judgment.

In *Lewis* v. *Long*, 3 Munf. 136, Judge Roane says: "The *'matter in controversy'* is that which is the essence and substance of the judgment, and by which the party may discharge himself."

In the cases of *Hutchinson* v. *Kellam*, and *Limbrick* v. *Selden*, 3 Munf. 202, Judge Cabell said: "The action of trespass is one in which damages alone can be recovered; and although title or bounds of land may be incidentally or collaterally brought in question, yet the value of the matter in controversy is from the nature of the action, the value of the damages sustained by the trespass, and this as well where the title or bounds of land may be drawn in question, as where they may in no manner be involved in dispute." In *Skipwith* v. *Young*, 5th Munf. 276, Judge Brooke says: "The matter in controversy is that for which the suit is brought, and not that which may or may not come in question.

In the case of *Umbarger and wife, &c.* v. *Watts, &c.*, 25th Gratt. 167, Judge Christian says: "In the case before us, the suit is not brought *for the land*, but to enforce a pecuniary demand against the land. The object of the suit is to recover money evidenced by judgments; and the land is only the fund out of which it is sought to enforce payment. In such a suit by a creditor to enforce a judgment lien, the question as to the title or bounds of land may or may not arise. The question does not (in such a suit) directly arise, but may arise as incident or collateral to the matter 'for which the suit is brought.' * * * * In every such case, the decree is always for the payment of the money

due under the judgment; and in default of payment within a reasonable time, the sale of the land is decreed. Now it would be a most unreasonable construction to hold, that in every creditor's bill to enforce a judgment lien, because the land may be sold by decree of the court to satisfy the judgment, that therefore it is necessarily a suit 'concerning the title or boundaries of land.' * * * The essence and substance of the decree is the payment of the pecuniary demand asserted; and, by that payment, the defendant '*may discharge himself;*' and the 'title or bounds of the law' be in no manner brought in question." 25 Gratt. 178.

The onus is upon the party seeking revision of the decree of the circuit court, to establish jurisdiction of the appellate court. *Harman* v. *City of Lynchburg*, 33 Gratt. 37.

Now the essential inquiry here is, what does the appellant, Buckner, claim in his bill filed in the circuit court of Louisa in this suit; and what is the value or amount of the *matter in controversy?*

The appellant, Buckner, says, both in his bill and in his petition for appeal, that the suit against the said defendant, John A. Metz and wife, and Philip Metz, was brought to enforce the lien of his judgment upon a tract of land consisting of eighteen and a quarter acres, of which John A. Metz was seized at the time of the recovery of said judgment, but which he and his wife subsequently conveyed to Philip Metz." The bill alleges that the rents and profits of the real estate of said John A. Metz (of which he knows of none other than the said eighteen and a quarter acres known as "Gunnel"), are insufficient to pay off his judgment in five years, and prays that the deed of the eighteen and a quarter acres to Philip Metz may be set aside, and that the said eighteen and a quarter acres of land may be decreed to be sold, and the proceeds of the sale of said land be applied to the satisfaction of his said judgment.

What is the value, or was the value of the said eighteen and a quarter acres of land at the date of the first decree rendered

in this case? The record shows that its value, ascertained by the proceedings in the cause, is less than $500. Buckner sold it to John A. Metz, in 1871, for $365; John A. Metz sold it to Philip Metz, in 1876, for $182.50; and the report filed in the cause by Commissioner Murray puts its value at $5 per acre, or $91.25.

We are of opinion that the matter in controversy in this case is less in value or amount than $500; and that therefore this court, under the constitution and laws of this commonwealth, is without jurisdiction to review the action of the court below in the case, and that the appeal must be dismissed.

Lewis, P., Lacy, and Hinton, J.'s, concurred.

Richardson, J., *dissenting*, said:

With deference, I think this court has jurisdiction under the constitution and laws of this commonwealth, to review the action of the court below in this case, and I base my opinion on two grounds:

*First.* The object of the suit was to enforce the lien of the judgment on the debtor's real estate. The amount of the judgment lien exceeds $500, exclusive of costs. It is the question of the right to enforce that judgment lien on any real estate the debtor may possess, whether much or little, valuable or trivial, which is "the matter in controversy"—"that for which the suit is brought"—"the subject of the litigation and upon which the issue is joined." The real estate on which the plaintiff avers this judgment is a lien, and out of which he claims the right to have it satisfied, in part, or in whole, as may be, is only *the means* of the satisfaction so far as it may suffice for that purpose. What its value may be, it matters not, though it would seem its value cannot be certainly ascertained till it has been tested by sale in open market.

The test of jurisdiction in such cases as this, is the amount or value of the judgment lien. In *Umbarger* v. *Watts*, referred to in the opinion of the court, it was pointedly held that this court has no jurisdiction to allow or to hear an appeal from a decree enforcing on real estate the liens of judgments, *no one* of which amounts to $500, though the aggregate of all exceed that sum. Had even one of the judgments amounted to the jurisdictional *minimum*, there would, as to it, have been jurisdiction. In *Harman* v. *Lynchburg*, also referred to, this court held that "the amount or value of the judgment at its date, determines the jurisdiction." And so in *Gage* v. *Crockett*, 27 Gratt. 735; and in *Campbell* v. *Smith*, 32 Gratt. 288.

*Second.* The right of the homestead exemption is of course a constitutional privilege. Its extent and nature partake of that character of controversy which entitles it to be considered within the jurisdiction of this court. Hence the question whether or not the alienation of the homestead estate divests it of its protection as a homestead exemption, and entitles the judgment creditor to pursue it in the hands of the alienee, is directly involved in this case, and would seem to give jurisdiction. In other words, the consideration of this case directly involves the question, whether or not, Philip Metz, the alienee of the real estate which composed the homestead exemption of the judgment debtor, has (on the ground that it *was* the homestead of his grantor) *title* to that real estate free from the lien of the plaintiff's judgment, to enforce which he has instituted this suit, and that plainly brings the case within that class of cases that concern "the title or boundaries of land," about the jurisdiction over which there can be no dispute.

Appeal dismissed.