# Richmond.

THOMPSON AND AL. V. ADAMS AND ALS.

DECEMBER 9th, 1886.

Absent, LEWIS, P.

1. APPELLATE JURISDICTION—*Enforcement of liens.*—Where several judgment creditors with judgments each below $500, unite in one suit to enforce their liens on the judgment debtor's land, and their bill is dismissed by the court below, this court has no jurisdiction to entertain their appeal. *Umbarger* v. *Watts*, 25 Gratt. 167.

2. IDEM—*Fraudulent conveyance.*—That the land has been conveyed away by a deed alleged to be fraudulent, makes no difference as to the appellate jurisdiction.

Argued at Staunton. Decided at Richmond.

Appeal from decree of circuit court of Rockbridge county, rendered 17th September, 1884, in the cause wherein J. L. Timberlake and J. A. Thompson were complainants, and Joseph M. Adams, S. G. Thompson, J. S. Hite, and John W. Bell, were defendants.

The object of this suit was to enforce a judgment in favor of J. A. Thompson against S. G. Thompson for $411.22, at date of appeal, and one in favor of Timberlake for a less sum, on land conveyed since the dates of the judgments, by S. G. Thompson to Joseph M. Adams, by a deed alleged to have been fraudulent. The circuit court dismissed the bill upon the hearing, and Timberlake, J. A. Thompson, and S. G. Thompson, obtained an appeal to this court.

Opinion states the case.

*Craig & Paul,* for the appellants.

*E. Pendleton,* for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The facts are these: On the first day of October, 1877, the defendant, S. G. Thompson, and his wife, Sallie F., for and in consideration of three thousand dollars, expressed in the deed, the receipt whereof is thereby acknowledged, conveyed to one Joseph M. Adams a certain store-house and lot at Goshen, Virginia, it being all the real estate to which he held title; and on the same day (October 1, 1877,) he (Thompson) made a bill of sale of his personal property to said Adams.

At the October term of said court, which commenced on the 5th day of October in said year, J. L. Timberlake obtained a judgment against S. G. Thompson for $175, with interest from May 19, 1876, and $7.76 costs; and on 24th of August, 1882, said S. G. Thompson confessed a judgment in the clerk's office of said court in favor of J. A. Thompson, for $275.50, with ten per cent. interest from December 5, 1873, subject to certain credits. Both of these judgments were obtained subsequent to the deed from S. G. Thompson and wife to Joseph M. Adams, who was the father-in-law of the grantor.

In May, 1883, J. L. Timberlake and J. A. Thompson, the plaintiffs, respectively, in said judgments at law, filed their bill against the said defendant in said judgments, S. G. Thompson, for the purpose of setting aside the said deed of October 1st, 1877, from said Thompson and wife to Adams, as fraudulent, and intended to hinder, delay and defraud the creditors of said S. G. Thompson, and on account of inadequacy of consideration; the bill charging knowledge on the part of Adams, the grantee, of the fraud and inadequacy, and on the part of

Hite, to whom Adams and wife conveyed said property, and of Bell, to whom Hite and wife conveyed the same property on the 1st day of October, 1881. The several deeds referred to are made exhibits with the complainants' bill.

The said plaintiffs also charge in their bill that said Adams, at the time of said conveyance to him, was in embarrassed circumstances financially, and unable to pay the consideration ($3,000) named in the deed.

The defendant, Hite, first answered the bill, and in his answer insists that he was an innocent purchaser for value, and without notice of the fraud, if any, charged against S. G. Thompson and Joseph M. Adams.

Later, the defendant, Adams, answered by leave of court, denying generally the allegations of the bill as to the fraud and inadequacy charged, setting forth how the consideration ($3,000), mentioned in the deed from S. G. Thompson to him, was paid, and *denying that he was, at the time, financially embarrassed,* but averring, on the contrary, that he had, at all times, "been possessed of ample resources to meet all his pecuniary obligations with promptness;" and that he never had any occasion to "bolster" himself, *as* is falsely charged in complainants' bill, by resorting to the property of S. G. Thompson.

Neither of the defendants, S. G. Thompson and Jno. W. Bell, ever answered the bill.

The depositions of witnesses were taken, and the chief witness for the plaintiffs was the defendant, S. G. Thompson, who was the grantor in the deed to Joseph M. Adams, of October 1st, 1877, charged in the bill to have been fraudulently made by him, and who does not answer the bill, but gives an elaborate deposition in which he undertakes to enter into and minutely detail all the circumstances leading to and attendant upon the alleged fraudulent conveyance by him, and in which he admits outright the fraud charged; and then, when the

court below, in view of all the facts and circumstances, refused to believe his statement (evidently made in his own interest), and to convict him of the fraud charged, he, though a defendant in the suit, and the principal one, joins with the plaintiffs as an appellant and seeks redress at the hands of this court against a decree which declined to adjudge him guilty of the fraud which, by his testimony, he sought to impose upon himself. Rarely, if ever, has a party stood before this court in a more reprehensible attitude.

As already intimated, the court, at the hearing, entered a decree refusing the relief sought and dismissing the plaintiffs' bill. From that decree an appeal to this court was granted.

In the foregoing statement has been embodied a brief sketch of the attitude in which the would-be appellant, S. G. Thompson, is placed by the record in this case. This has been done merely for convenience, as the case must go off on a jurisdictional question raised by the counsel for the appellees at the bar.

Counsel for the appellee submit that the appeal in this case should be dismissed on the ground that neither of the judgments sought to be enforced amounted, at the date of the decree complained of, to the minimum sum prescribed by the constitution for the jurisdiction of this court.

By section two of article VI. of the Constitution of Virginia, it is prescribed that this court "shall not have jurisdiction in civil cases when the matter in controversy, exclusive of costs, is less in value or amount than five hundred dollars," except in certain cases mentioned in that section, which need not be repeated here.

The principles contended for by the appellee in support of this motion were clearly stated by Christian, J., in *Umbarger* v. *Watts*, 25 Gratt. 167, since which decision the practice of this court has conformed to the just and wise principles

laid down in that case.   There a judgment creditor brought
his suit in equity to subject his debtor's land to the satisfaction
of his judgment; and other judgment creditors of the same
debtor came into the cause, by their petitions, to subject the
land.   None of the judgments amounted to $500.   At the
hearing the court below entered a decree against the plaintiffs,
dismissing the bill.   An appeal was applied for and was obtained,
and on motion to dismiss the appeal, this court held that it
had no jurisdiction to allow or hear an appeal from the decree.

In that case, as here, the jurisdiction of this court was
invoked upon the ground that, although no one of the several
claims of the appellants amounts to the sum of $500, yet the
aggregate sum of all amount to more than that sum, and that,
having a joint interest in subjecting the land to the payment
of their several judgments, the aggregate amount ought to be
considered in this court as the amount in controversy.   But,
Christian, J., delivering the unanimous opinion of the court,
said: "It is clear that the claims of the appellants are several,
and independent of each other.   They are founded upon differ-
ent contracts, upon judgments obtained at different times.   The
allowance or rejection of one in no manner affects the others.
There is neither a joint interest nor a community of interest
among them.   All that can be said is, that they are pursuing
the same debtor, and are seeking to subject the same property.
Nor have they a common interest in that property.   If the
property they are seeking to subject to the liens of their seve-
ral judgments was declared to be so liable, their interest would
not be a common interest, but each independent of the other;
for the proceeds would not be distributed *pro rata*, but accord-
ing to the priorities of their several judgments.   So that, in fact,
their interests are diverse and antagonistic, instead of joint and
common.   They do not sue as co-plaintiffs, because they have a
joint and common interest; but for convenience, and to save a

multiplicity of suits, other creditors are permitted to come in by petition in a suit already commenced by one creditor. But though the proceeding by petition be in the same suit, these several demands are as distinct and independent of each other as if they were pursuing the same debtor in different and independent suits. The decree of the court is not joint, but several, decreeing the several amounts due to them respectively, according to their several judgments. If one of the creditors is aggrieved by the decree, it is to the extent that *his claim* is not paid, and not because other creditors are not paid; and if his claim be less than $500, he cannot successfully invoke the jurisdiction of this court by uniting his claim to that of another creditor, in order to swell the amount to $500." And, further on in the same opinion, the same judge says: "The phrase, 'the matter in controversy,' when used in relation to the appellate jurisdiction of this court, has already received a judicial exposition;" and he quotes with unqualified approbation the language of Judge Roane in *Lewis* v. *Long*, 3 Munf. 136, where that able jurist said: "The matter in controversy is that which is the essence and substance of the judgment and by which the party may discharge himself."

In the case at bar, the bill was filed by J. A. Thompson and J. L. Timberlake, two judgment creditors of the defendant, S. G. Thompson, to subject his land to satisfy their judgments. The claims thus asserted accrued in different rights; the judgments were recovered at different times, and were founded on several and distinct contracts; and the judgment creditors, though they joined in the same suit, which, for convenience and to avoid multiplicity of suits, is permissible, and were seeking to subject the same land, yet they had, and could assert, no common interest in that property, their judgments being several and distinct, and as independent of each other as if they had been sought to be enforced in different suits.

And had they succeeded in the court below, the decree would not have been joint, but several, giving to each the amount due him according to his several judgments; and in coming to this court they must, by necessity, come asserting their several and distinct claims respectively.

Neither of the judgments, with interest to the date of the decree complained of, amount to $500. The largest judgment, that of J. A. Thompson, is for $275.50, with interest at 10 per cent. from December 10th, 1873; and, after calculating the interest to the date of the decree, and applying the credits, amounts to only $411.22, which is below the jurisdictional limit of this court as fixed by the Constitution.

The only difference between *Umbarger* v. *Watts, supra,* and this case is, that here the complainants seek to enforce their judgments against the real estate of the judgment debtor conveyed to the defendant, Adams, prior to the rendition of their respective judgments, and which conveyance they allege to have been made to hinder, delay and defraud creditors, whilst in *Umbarger* v. *Watts* there was no such question. The difference is merely circumstantial, and cannot vary the rule. In that case, as in this, the prime object was to enforce the judgments respectively against the real estate of the judgment debtor, alleged to be his and liable to the judgments. The alleged fraudulent conveyance in this case is but a not uncommon incident to suits for the enforcement of judgment liens, and occurs whenever there is by the debtor a conveyance which is, or is supposed to be, in fraud of the rights of creditors; and whenever such obstruction stands in the path of the real object of the suit—the collection of the plaintiff's debt—he, in his bill, calls attention to the fact, makes the proper allegations, and asks the chancellor to remove the obstruction and enforce the real object of the suit.

We know of no reason why the alleged fraudulent convey-

ance in this case (which, by the by, was not sustained by proof), should vary the doctrine so clearly and ably laid down in *Umbarger* v. *Watts.* For here, as there, the judgments are several and in separate and distinct rights. There is, and can be no sufficient reason why this court should adopt a different practice in cases where, in order to enforce a judgment lien, it becomes necessary to assail a conveyance as fraudulent from that observed where there is no such obstruction, the real object of the suit in both cases being the collection of the debt, and the right being as sacred in the one case as the other. In every such case the real object of the suit is to collect the debt, and the debt sued for is "the matter in controversy," the judgments respectively asserted, where more than one judgment creditor joins in the suit, being severally, as to each plaintiff, "the essence and substance" of the suit. In this case, neither of the several and distinct judgments which exist in separate and distinct rights, amounting to $500, it is clear that this court is without jurisdiction. Therefore, the appeal having been improvidently granted, the same must be dismissed.

APPEAL DISMISSED.