# SPRING SPECIAL TERM.

## CHARLESTON.

### MᶜCLAUGHERTY v. MORGAN et al.

Submitted January 22, 1892.   Decided March 19, 1892.

1. APPEAL.

In a suit to subject land to a debt and set aside a deed from the debtor as fraudulent there is a decree subjecting the land. Though the debt is less than one hundred dollars, yet the alienee holding under such deed may appeal, because the case involves the title to the land within the meaning of article VIII, § 3 of the constitution.

2. APPEAL.

Where the title or boundaries of land are involved in a suit in a Circuit Court, and there is error, there may be an appeal or writ of error without regard to the value of the land.

3. FRAUDULENT CONVEYANCE.

A voluntary transfer of property from husband to wife is not, simply because voluntary, void as to subsequent creditors of the husband.

*O. Johnson* and *A. C. Davidson* for appellant cited 24 W. Va. 401; 18 W. Va. 309; 26 W. Va. 341; 28 W. Va. 321; 29 W. Va. 508; 33 W. Va. 69.

*W. W. McClaugherty* for appellee cited 32 W. Va. 203; Id. 447; 30 W. Va. 593.

Brannon, Judge:

Mariah Morgan appeals to this Court from a decree of the Circuit Court of Mercer county in a chancery suit brought by W. W. McClaugherty against John T. Morgan and others. John T. Morgan executed to McClaugherty a bond for ten dollars, dated April 21, 1886, and in the suit an attachment was levied on a certain lot of land as the property of John T. Morgan, and by amended bill it is alleged that since the docketing of a *lis pendens* in the cause Morgan had procured a deed to be made from Spangler to Mariah Morgan, wife of John T. Morgan, for said lot; that the lot had been purchased and paid for with money of the husband, and the deed so made was with intent to hinder, delay and defraud his creditors. Morgan, pending the suit, paid ten dollers, which was credited on the debt, and a decree for nine cents and costs was rendered in favor of the plaintiff; the deed to Mrs. Morgan was set aside as void as to said debt, and the lot held liable to the payment of said debt and costs; and its sale was directed in case of non-payment; and it was sold under the decree, and its sale confirmed.

The appellee does not suggest any want of jurisdiction to entertain this appeal. The counsel for appellants suggest that a question as to this may arise, and they contend that there is jurisdiction. In view of the very small sum decreed there may occur to the mind a question of jurisdiction, and I will state the reasons which in my opinion sustain the jurisdiction, though I admit that the point is one not free from question.

The constitution provides that the Supreme Court of Appeals shall have appellate jurisdiction where the matter in civil cases "in controversy, exclusive of costs, is of greater value or amount than one hundred dollars; in contro-

versies concerning the title or boundaries of land;" and other classes of cases.    Article VIII, § 3.    Under the first clause there is no jurisdiction for this case; but under the second there is.

I know that it has been held that, where the matter in controversy is pecuniary merely, there must be in the appellate court controversy to the extent of the amount named, and that in suits merely to subject land of a debtor to judgment-liens, though the land sold is of greater value than the specified amount, yet the controversy is regarded as simply pecuniary, and the fact that the land is subjected in default of payment does not make the case one bringing the title of lands into controversy.    *Rymer* v. *Hawkins*, 18 W. Va. 309;    *Morrison* v. *Goodwin*, 28 W. Va. 328;    *Umbarger* v. *Watts*, 25 Gratt. 167.

But I think such a case as this does not fall under that principle, because here is purely a question of the title or right to the land itself, its ownership.    Here the debt of ten dollars, while involved in the suit, is not in controversy for the purposes of this question, but the title to land, in the sense of ownership, is—that is, if the title to the lot be in John T. Morgan, then it is subject to the debt, and the wife loses the land; if the title or right be not in him but in the wife, her right saves it to her, because of its being in her. The existence of the debt is conceded on both sides, and so is not in controversy.    But the creditor says the right to the lot as to him is in Morgan, his debtor, and he will take his shoes and subject the lot.    The wife denies the right or title of Morgan and asserts her own right and title as a bar against the subjection of the lot; and that is the matter in controversy.

In *Hutchinson* v. *Seldon*, 3 Munf. 202, it is held that to give appellate jurisdiction, on the ground that the controversy concerns a freehold, it must be directly the subject of controversy.    Is not the right to land here directly the subject of controversy, just as much as in ejectment, or in the equity suit of *Ayers* v. *Blair*, 26 W. Va 558, to set aside a judicial sale and recover the land, where it was held the suit involved the title to land?    Is it merely incidentally or collaterally in issue?    I do not say that the question of title

in the technical sense—that is, of the legal title—is in controversy in the sense in which one would speak of it in a contest between adverse claimants of lands; but to so limit the word "title," used in the constitution, would render the sense too narrow, and defeat the purpose of the provision. Does not the word mean ownership or right?

The appellant's land is to be taken for what reason? Not because she has any relation to the debt, but because of defect or invalidity of her title to it; that is, her ownership of it, her estate in it.

But it may be said that no one questions that the deed to her confers title on her, and that it is good as between her husband and her, and is void only as to creditors. Still, this is to render her title subject to that debt. It detracts from her estate and property in the land, qualifiés and lessens her property in it; whereas her claim is that her estate is full, complete and not subject to such liability. If she loses, her very deed itself is set aside to an extent, in many instances, in effect absolutely. If she loses, it is because of defect or imperfection of her ownership. If she successfully defends, it is because her ownership is complete and perfect. If after sale under the decree she were to bring an independent suit to set aside the sale and recover the land, there would be jurisdiction for an appeal under the case of *Ayer* v. *Blair, supra;* but when she defends to defeat a sale it is said there is no jurisdiction. To her, what matters it in what form comes the proceeding in which her land is taken? She is not a particle interested in the suit except as it seeks to overthrow her claim to the land. She pleads her right in defence. She wants to see whether there is error in the decree which takes it from her. Does not the constitution intend that she shall be heard in this Court?

It may be said that the suit is not to recover land, but only to enforce a debt against it; that the decree does not of its own force change or divest title, but only a sale in case of nonpayment takes away the defendant's title; and that she can, by payment, defeat that result. Numerous cases do hold that, where the only purpose of the suit is to enforce a debt against land, the matter is merely pecuniary, and governed by the amount of the debt; and in them it is

put as a test that, where the party can discharge the land by payment of the sum decreed against it, then there is no appellate jurisdiction, because the title to land is in controversy. *Skipwith* v. *Young*, 5 Munf. 276; *Umbarger* v. *Watts*, 25 Gratt. 179; *Rymer* v. *Hawkins*, 18 W. Va. 316; *Morrison* v. *Goodwin*, 28 W. Va. 329.

That test has force as applied to the judgment-debtor. Where debt of less amount than the amount required for appellate jurisdiction is decreed against a debtor's land, he can not appeal on the theory that the title to land is in question, for it is not involved. The sole matter in issue as to him is the debt; but the same can not fairly he applied to a party, whose land is to be taken to pay that debt; for as to this party the only matter in controversy is whether his land is liable. In this case it is a direct attack on the land —that is, to subject it to a debt; not to recover it, but to fix a debt upon it which takes it from her for no other reason than that her title, right, or ownership is invalid as to it. That was the matter in controversy as to appellant. Said Mr. Justice FIELD in *Lee* v. *Watson*, 1 Wall. 339: "By 'matter in dispute' is meant the subject of litigation, the matter for which the suit is brought, and upon which issue is joined."

The case of *Parker* v. *Valentine*, 27 W. Va. 677, was a case in character like this, with the distinction that in it it appeared the land was over one hundred dollars in value, and here it is less. True, in that case the reason given for sustaining the jurisdiction was that, though the debt decreed was less than one hundred dollars the value of the land was greater; but if, where a debt below the jurisdiction is sought to be asserted upon the land of a fraudulent alienee of the debtor, the jurisdiction is tested by the amount of the debt, and is only pecuniary, how could there be jurisdiction of that appeal? For there payment of the debt would discharge the land, regardless of its value, and that is the test according to the opposite theory.

I think that that appeal was properly entertained, though not for the reason given; and that that case is authority for sustaining this appeal. That was a case where a bill was filed by a judgment-creditor to enforce a

judgment for less than one hundred dollars against land on the theory that land had been purchased by the judgment-debtor, and conveyed to his sister to defraud his creditors, and the Circuit Court held the land liable; and, while this Court refused the appeal as to the judgment-debtor, it allowed it and upheld the jurisdiction to entertain it as to the sister. Thus a distinction was drawn between the debtor and the other party claiming the land.

I have found two Virginia cases holding seemingly a different view under a similar provision as to jurisdiction —*Thompson* v. *Adams*, 82 Va. 672, and *Hawkins* v *Gresham*, 85 Va. 34 (6 S. E. Rep. 472); but when analyzed they may not have that effect.

In the former case Adams, the fraudulent alienee, was not appellant, and of course the debtor and grantor could not say the title to the land was in controversy—only Adams could; and the remarks of the judge that the feature that there was a fraudulent conveyance in that case but not in the Umbarger Case did not distinguish it from that case were strictly correct as regarded the debtor. So in the case of *Hawkins* v. *Gresham*, the debtor was appellant, not the alienee. So the point here involved did not arise in those cases. Certainly the question whether the alienees owning the land sold from them could appeal without regard to value of the land was not discussed. Since writing the foregoing part of this opinion I have met with the case of *Patteson* v. *McKinney*, 14 S. E. Rep. 379, which was a suit to subject land to a judgment docketed before a conveyance of it by the debtor to a trustee for the benefit of the debtor's wife; and the Virginia court held that, as the debt decreed was less than the sum required for appeal, there was no jurisdiction to support the appeal, on the ground that the suit concerned title to land, the Virginia constitution giving jurisdiction in "controversies concerning the title or boundaries of land." I think the court failed to draw the distinction between the judgment-debtor and the wife as to the right of appeal, and improperly applied principles, which would forbid an appeal by the judgment-debtor, to deny an appeal to the wife claiming the land.

The opinion says: "The judgment is the matter in con-

troversy, since by payment of that the appellants could at any time have discharged themselves, and ended the suit."

It does strike me that where a party, whose land has been charged with another's debt, on the ground that his right to the land is fraudulent and void as to that debt, asks an appeal to try, not whether the debt exists, but only whether his title was properly held invalid as to the land, it would be a poor answer to tell him he has but to pay the debt to save his land. The debt may be largely more than his land is worth, or he may be unable to meet it. He loses his land. It is immaterial to him what is the form in which his land is charged. It is the fact, that it is charged at all, of which he complains.

The judge delivering the opinion in *Patteson* v. *McKinney*, seems to have seen the difficulty of refusing an appeal in a case where a deed is sought to be held void; for he says the bill claimed that the judgment, in consequence of the fact that it was docketed, "fastened on the land in the hands of the debtor, and that no subsequent conveyance by him without the complainant's consent could divest or affect 'it. The bill indeed admits, that the title is in the heirs at law of the deceased wife, and does not ask that the deed be set aside." So says the syllabus. Are we to infer that, in the opinion of the judge, if the bill had directly assailed the deed, as the bill in this case does, the case would be different?

*Fink* v. *Denny*, 75 Va. 663, broadly lays down the proposition that a suit to set aside deeds on the ground of fraud, and subject the lands conveyed to a debt, is not in the category of "controversies concerning the title or boundaries of land;" but the case is an appeal by the creditors seeking to subject the land, not by the wife claiming the land; and in such case, as to the creditor, the amount of the debt governed.

*Buckner* v. *Metz*, 77 Va. 107, was a case where a creditor sought to sell land claimed as a homestead by the debtor, and afterwards conveyed by him to another; and it was held that it was not a suit for land, and no such controversy "concerning the title or boundaries of land" as would

give jurisdiction. But the appeal was by the creditor, whose bill was dismissed.

These case are calculated to mislead us unless they are carefully analyzed.

In Illinois there is appellate jurisdiction where a "freehold is involved." In *Sandford* v. *Kane*, 127 Ill. 596 (20 N. E. Rep. 810) the opinion states that it is the rule that bills to foreclose mortgages or establish liens on lands do not ordinarily involve freeholds, because payment will prevent the decree from being executed so as to divest the freehold"—and "usually the only question litigated is the existence of the debt, the title not being in issue. The same may be said of the right to redeem, where the right to redeem is the only question litigated. But in such cases, where the pleadings raise adverse claims of title between the parties, which must be adjudicated in order to a decree, the freehold is involved."

In the case we now decide the pleadings raise the issue of the validity of the deed to Mariah Morgan as to the debt, and without deciding that issue and overthrowing her title *pro tanto* it was impossible to reach a decree. The matter decided was not purely and only a pecuniary demand. If a suit be brought to set aside a deed for land because procured by fraud, or made under mistake, or as void *in toto* in law, there would certainly be jurisdiction on the ground that the controversy concerned the title to land; but where the suit seeks to set aside the deed, not absolutely, but only as to debts which may work the total loss of the land, the case is different. I do not see any substantial ground of difference. Where a suit involves title or boundaries of land, and there is error, proceedings in error may be had regardless of the value of the land. *Sandford* v. *Kane, supra.*

Having jurisdiction to entertain this appeal, what of its merits? In May, 1883, Morgan and his wife married, and within a few days Morgan contracted with Spangler for the purchase of this lot, with direction to Spangler to make the deed to his wife when the purchase-money should be paid. Morgan paid part, and his wife the residue at different times; and on January 17, 1885, Spangler gave a

receipt, stating that he had received of Mariah Morgan the whole purchase-money, and binding himself to make her a deed. ·

Morgan and his wife 'state in evidence that she had, when married, sixty dollars, and that she let him have at one time twenty three dollars, and afterwards twenty dollars, of it, with a promise that he would return it; that four dollars of the twenty three he paid on the lot as cash, to bind the bargain; that he afterwards worked for Spangler under agreement with his wife that his work should go on the lot as repayment to her of money lent. Spangler says this work was credited on the lot, and that she paid balance by keeping boarders and washing; but they say it was out of the money she had when married.

Now, grant that, if such loans were made, they were not in fact loans, but gifts from wife to husband; grant, then, that in fact she had not this money, but that all the money paid was the husband's; grant that what she paid was from her earnings, and belonged to him under the law— still the property can not be charged by the plaintiff, because when the purchase-money was paid the plaintiff's debt had no existence. As a gift to the wife, or purchase of property for her, it would be valid as to subsequent debts, under section 2, c. 74, of the Code.

To make a voluntary conveyance void as to subsequent creditors it must be shown that it was made with set purpose to defraud existing creditors or subsequent creditors. There were no debts shown to exist when this lot was purchased or paid for; no subsequent debts shown, except the plaintiff's. The case shows no fraudulent intent in fact. The house was built on the lot the year it was bought, before the debt arose; and the bill does not rely upon that feature.

The decree of sale of 4th February, 1890, must be reversed, and the bill dismissed as to Mariah Morgan. The title of the purchaser can not be affected, but Mariah Morgan must have restitution of the whole proceeds of sale of her lot. If the commissioner has not paid over to the plaintiff his debt and costs, the court will direct him to pay what is in his hands, and any money paid into court from

the note of seven dollars and fourteen cents, given by the
purchaser, to Mariah Morgan; and for any money paid to
the plaintiff a decree must be rendered by the Circuit Court
against him in favor of Mariah Morgan, with interest from
the time he received it; and the court will take such steps
as will enable it to make full restitution of the whole pro-
ceeds of the sale of the lot—eighty eight dollars and fifty
cents—to Mariah Morgan.

REVERSED.   REMANDED.