# CHARLESTON.

PARKER *et al. v.* VALENTINE *et al.*

Submitted February 2, 1886.—Decided February 20, 1886.

1. Where a suit has been brought to set aside a deed as fraudulent and subject the land to the payment of a judgment, which with interest is less than $100.00, but the land is worth $150.00, the judgment-debtor and grantor is not entitled to appeal from a decree declaring the deed fraudulent, but the grantee, whose land is subjected, the value thereof being more than $100.00, is entitled to an appeal. (p. 680.)

2. The record must show, that this Court has jurisdiction of the appeal; and where the amount in controversy is the value of a tract of land, and it appears that the appellant bought the land for $150.00, and had actually paid $113.00 thereon, it does appear from the record, that the amount in controversy is over $100.00. (p. 680.)

3. Fraud may be inferred from the facts and circumstances of the case; and if these facts and circumstances are such as to make a *prima facie* case of fraudulent intent, they are to be taken as conclusive evidence of such intent, unless rebutted by other facts and circumstances in the case. (p. 680.)

4. A case in which it was held, that the *prima facie* evidence of fraud was clearly rebutted. (p. 681.)

5. A decree for sale of land, which does not require the commissioner appointed to make the sale to first execute bond, will be reversed. (p. 681.)

*H. C. Showalter* for appellant.

*R. S. Blair* for appellee.

JOHNSON, PRESIDENT:

A. R. Parker and others filed their bill against William A. Valentine and Julia A. Valentine to enforce the lien of a judgment against thirty acres of land conveyed to Julia A. Valentine by one William H. Pierpoint. The suit was brought in the circuit court of Ritchie county, in which county the land was situated and the judgment recorded. The judgment was for $55.46 with interest from January 5, 1875, and the costs. The bill further alleges that on Octo-

ber 13, 1883, William A. Valentine having purchased a tract of thirty acres of land in Ritchie county of William H. Pierpoint caused the deed therefor to be made to his sister Julia A. Valentine; that the consideration for said purchase was $150.00, $75.00 of which was paid by an order of the county court to William A. Valentine, and that afterwards said William A. Valentine paid $38.00 in cash on said purchase. The bill charges that the deed was made to Julia A. Valentine with intent to hinder, delay and defraud the creditors of William A. Valentine. The bill prays that the said deed be set aside as fraudulent as to the said judgment, and the land subjected to the payment thereof.

William A. Valentine answered the bill denying the fraud charged. He avers that he as the agent of his sister purchased said land and had it conveyed to her; that the defendant at the time owed his sister $150.00 for which he had executed to her his note, and that the order he paid for her and also the $38.00 in money, for which he was to be credited on the note, he owed to her.

Julia A. Valentine also answers the bill; and in her answer she avers, that in January, 1882, she had sold to Wm. A. Valentine a mare and wagon for $150.00; that he executed his note to her therefor; that at the time the land was purchased the note was due; that she authorized her brother to buy the land for her, and it was agreed, that whatever amount he further paid to Pierpoint on the land she would credit him therefor on the note; that there is a balance due from her to Pierpoint on the land, for which he holds a vendor's lien; that she is illiterate, and because of that fact she had her brother to buy the land for her. She denies all fraud in the transaction.

The plaintiffs took the deposition of W. H. Pierpont. He says: "I contracted to sell a tract of land to him (Valentine). He told me he would find me a purchaser. The contract price was $150.00, and when it come to making a conveyance, he told me to make the deed to Julia A. Valentine, his sister. He was to pay me $75.00 and the residue in one year from date of deed." He further said in answer to a question: "I think the deed was already made when the payment of $75.00 was made, and I delivered the deed,

when the payment of $75.00 was made.    "The contract for the purchase, he says, was a verbal one.    He executed the deed within two weeks from the time the verbal contract was made.

Valentine and his sister in their depositions say, that Julia had worked out for a number of years and had saved some money.    William says he owed his sister $150.00, and at her request bought the land for her and paid the money for her, for which he was to receive credit on the note, which he owed his sister.    He says Pierpoint knew he was buying the land for his sister; says he told Pierpoint he was not able to buy the land for himself and did not want it.    Julia A. Valentine exhibits with her deposition the following note, which she says was executed to her on the day it bears date:

"For value received I promise to pay Julia A. Valentine the sum of one hundred and fifty dollars, due from date. Given under my hand and seal this January 2, 1882.

"W. A. Valentine.    [Seal.]"

On the note are the following endorsements: November 21, 1883, credit to cash $75.00 paid to W. H. Pierpont; November 29, 1884, credit to cash $38.00 paid to W. H. Pierpont."

D. A. Hosteter in his deposition says, that the note was executed in the spring of 1882 to Julia A. Valentine for a mare and wagon, which belonged to her; that she had been working for herself for fifteen or twenty years; that he knew of her buying and selling land and trading in stock; that she sold forty-four acres of land and in part payment took the mare and wagon which she sold to her brother.    "She gets her brother to attend to her business frequently as she is no scholar."    He also says, that he heard her in the spring of 1883 talking about buying the land from Pierpoint and heard her ask her brother to see Pierpoint about the land.    Hosteter is a brother-in-law of William A. Valentine.

Counsel for appellants insist that Julia showed on her cross-examination that she was trying to evade the truth; that speaking of the tract of land, which she had sold, and for which she had taken the mare and wagon in part payment, she was asked: "From whom did you get that tract of land?" She replied: "Bill Valentine got it for me from Mr. Vays."

Being asked, " Did you furnish the money to buy it ?" she answered : " Of course the money was furnished to him." Question.—" By whom ?" Answer.—" So he got it, it don't make any difference." Being asked, "Do you refuse to tell who furnished the money ?" she answered : " I'll not tell it unless I see cause to tell it. I've stated it plain enough, and that's enough." It is very plain that she was very much worried by the cross-examination.

On June 24, 1885, the cause was heard upon the pleadings, exhibits and depositions, and the court held the deed fraudulent and void as to the judgment of plaintiff and decreed, that the land be sold to pay the said judgment, &c. The decree does not require bond to be executed by the commissioner before the sale.

William A. Valentine and Julia A. Valentine petitioned this Court for an appeal from and *supersedeas* to said decree. No appeal was allowed as to William A. Valentine, because as to him the court had no jurisdiction, the matter in controversy as to him being less than $100.00 exclusive of costs. An appeal and *supersedeas* was granted to Julia A. Valentine.

It is now insisted, that the appeal as to her should be dismissed as improvidently awarded, the Court not having jurisdiction as to her. There is nothing in this position. The appeal if granted to William A. Valentine would have to be dismissed for want of jurisdiction, as the record shows, that as to him the matter in controversity was less than $100.00 (*Rymer* v. *Hawkins*, 18 W. Va., 309); but a different rule must apply as to Julia A. Valentine. She claims, that her land worth at least $150.00 was subject to the payment of the debt of another. The matter in controversy as to her is the value of the land not the amount of the judgment recovered; and the record showing, that the land was worth at least $150.00, or that that is the price, that was agreed to be paid for it, and $113.00 has actually been paid on it, this Court has jurisdiction of the appeal of Julia A. Valentine. (*Ayers* v. *Blair*, 26 W. Va. 558.)

Was the deed executed to Julia A. Valentine with a fraudulent intent ? Fraud may be inferred from the facts and circumstances in the case; and if these facts and circumstances are such as to make a *prima facie* case of fraudulent intent,

they are to be taken as conclusive evidence of such intent, unless rebutted by other facts and circumstances in the case. Here were facts and circumstances sufficient to show *prima facie* a fraudulent intent in William A. Valentine. He owed the judgment set up in the bill; he contracted for the land, paid the $113.00, and had the deed made to his sister. Are these circumstances shown to be consistent with an honest intent? It is clearly shown, that he was indebted to his sister in the sum of $150.00, and that at her request he made a verbal contract for the purchase of the land for her, and within two weeks thereafter had it conveyed to her in accordance with the original intent. The money he paid was paid on the *bona fide* debt to his sister, for which she gave him credit on the note. I think that it is clearly shown that this was an honest transaction. The inculpating facts are all shown to be consistent with an honest purpose. The decree is also erroneous, because it did not require the commissioner appointed to make the sale, to first execute bond as the statute requires. (*Neely* v. *Ruley,* 26 W. Va. 686.)

The decree is reversed with costs, and the bill is dismissed at the costs of plaintiffs.

REVERSED.  DISMISSED.