# CHARLESTON.

RUFFNER BROS. *v.* WELTON COAL & SALT CO. *et al.*

Submitted February 6, 1892.—Decided March 26, 1892.

1. DEED—SECURITY—FRAUD.

Where a deed is made for the security of various creditors whose claims are distinct and unmingled with each other, and where part are illegal and fraudulent and another part are fair and untainted with fraud, the security shall not be avoided as to the latter, provided they have given no aid in any way to the concoction of the fraud. (pp. 258, 259.)

2. DEED—SECURITY—FRAUD.

A deed of that character ought to be considered distributively, and, while it is avoided in part, it should be effectual as far as it is good. (pp. 258, 259.)

3. DEED—CORPORATION—SEAL.

Where the deed of a corporation purports to be sealed with its corporate seal, and it is proven to be signed by the proper agents of the corporation, the presumption is that the seal was affixed by the proper authority, and such contract will be held valid until the contrary is shown. (p. 261.)

4. DEED—CORPORATION—SEAL

The presumption of authority to affix the corporate seal to a deed or contract will not be overcome by the mere fact that no vote of the directors authorizing it is shown. *Fidelity Ins., T. & S. D. Co.* v. *Shenandoah Val. R. Co.*, 32 W. Va. 244 (9 S. E. Rep. 180.) (p. 261.)

*Mollohan & McClintic* and *Flournoy & Price* for appellants cited Code, c. 53, s. 51; Code, c. 52, s. 48; 27 Me. 509; 35 Mo. 13; 13 Metc. 504; 55 Conn. 455; 30 Conn. 565; 68 Mo. 601;

59 Cal. 678; 23 N. H. 555; 5 Watts 152; 1 Woolw. 400; 45 Mich. 103; 6 Ed. & Bl. 341; 96 N. Y. 467–474; Mora. Corp. § 635; Id. 577, 593, 594, 610, 611; 28 Mo. 415; 1 Watts 385; Mora. Corp. §§ 578, 587, 588, 616, 618, 630; 69 Pa. St. 426, 429; 120 U. S. 256; 131 U. S. 371; Mora. Corp. 626; 30 W. Va. 123; 24 Ind. 458; 21 How. 545; 41 Barb. 9; 8 W. Va. 400, 441; 25 W. Va. 789; 20 W. Va. 443; Code, c. 75, s. 7; 30 W. Va. 454; 32 W. Va. 34; 33 W. Va. 449; 23 W. Va. 749; 24 W. Va. 674; 7 Paige 568; 42 Ill. 231; 17 N. Y. 22; 24 N. Y. 304; 59 Miss. 99; Code, c. 93, ss 11 –13; 15 Am. Dec. 587.

*O. Johnson* and *H. C. & L. E. McWhorter* for appellees cited 5 Conn. 549–580; 6 Hill 438–440; 2 Lann'd 594; 3 Penn. & W. 83–94; 3 Whart. 347; 9 Ala. 305; 1 Ired. L. 490; 14 Johns. 458; 34 Hun 457; 21 N. Y. 168; 22 W. Va. 585; 4 Rand. 310; 26 Gratt. 926; 25 W. Va. 789; 30 W. Va. 443; 7 Paige 568; 42 Ill. 231; 17 N. Y. 22; Wait. Fraud, Corp. § 535; 12 Fed. Rep. 233; 3 Johns. Ch'y 3; 37 Barb. 621; 22 W. Va. 208; 23 W. Va. 749; Id. 756; 52 Barb. 283; 3 Paige 157; Acts 1891, c. 123, s. 1; 28 W. Va. 666; 10 Paige 224; 10 W. Va. 87; 17 W. Va. 717; 24 W. Va. 199; 43 Am. Dec. 633; 5 Munf. 207; Gilm. 329; 2 Leigh 353; 1 Call. 492; 3 Munf. 417; 22 W. Va. 434; 31 W. Va. 156; 2 Mich. 460; 1 Ind. 411; 26 Vt. 472; Burr. Ass. § 354; 4 Rand. 368; 8 Leigh 510; 10 Leigh 321; 12 Leigh 427; 3 Md. 11; 13 Pa. St. 306, 309; 19 N. Y. 146; 9 N. Y. 142; Id. 152; 37 N. Y. 657; 8 Wis. 187; Beach Priv. Corp. § 279; Id. § 321; Id. §§ 241, 242; 94 Pa. 238; 40 Cal. 78; 64 Wis. 639; 6 R'y & Corp. L. Journ. 414; Beach Corp. § 241; 22 W. Va. 592; 27 Me. 509; 14 Pet. 129; 35 Mo. 13, 26; 13 Metc. 504; 30 Conn. 565; 59 Cal. 678; 23 N. H. 55; 45 Mich. 103; 15 Pick, 440; 96 N. Y. 467–474; 1 Watts 385; Cook. Stockh. § 661.

ENGLISH, JUDGE:

On the 4th day of May, 1879, one John D. Lewis, who is now deceased, conveyed a tract of land containing one hundred and eighty four acres, known as "Lot I," in the plat of what is known as "Ruffner and Lewis," situated a

short distance from the Kanawha river, on the upper side of Campbell's creek, in the county of Kanawha, which was principally valuable for the coal it contained, to D. L. Ruff-ner, trustee, to secure certain debts in said deed mentioned and for the purposes therein set forth. On the 1st of July, 1882, said D. L. Ruffner, as such trustee, leased said coal property to certain parties doing business under the name and style of W. D. Lewis & Co. for the purpose of mining coal therefrom and for other purposes; and said lessees were to pay one half cent per bushel as rent or royalty for all screened and merchantable coal mined from said tract of land, in semi-annual payments, on the 1st day of January and July of each year.

Said lessees, after entering upon said land and operating it for some time, became embarrassed, and suspended their operations, and a corporation known as the "Welton Coal & Salt Company" having been formed, in some manner which does not appear, said corporation became the successors of said W. D. Lewis & Co. as lessees of said coal property, occupying the same position and entitled to the same rights with reference to said land as said William D. Lewis & Co. acquired under said lease, and subject to the payment of the same rents and royalty as the said W. D. Lewis & Co. contracted to pay. On the 28th day of June, 1883, the said D. L. Ruffner resigned said trust, and C. C. Lewis was appointed trustee in his room and stead.

It further appears that said corporation took possession of said coal property, and operated the same, mining coal therefrom, and that they paid the royalty which accrued under said contract of lease for the years 1884 and 1885, but that subsequent to that time it failed to pay said royalty, but allowed the same to accumulate, until on the 16th day of March, 1889, its indebtedness on that account to said trustee amounted to five thousand and ten dollars; and while said corporation was so operating said coal property it became indebted to various other parties in considerable amounts; and on that day the directors of said company, at a meeting held in the city of Parkersburg, authorized and empowered M. Beane, vice president of said company, on its behalf, to execute a deed of assignment to R. B.

Winkler, trustee, conveying to him all the property of said company of every kind, wherever situated, to be by him sold for cash at the company's store in Kanawha county, W. Va., and the proceeds of sale *first* applied to the payment of expenses of sale; *second*, rents and royalty due from said company to John D. Lewis's estate; *third*, indebtedness due P. Il. Noyes & Co.; *fourth*, labor account to M. Beane and one to John App, and also a debt to Charleston National Bank; and, *fifth*, all other indebtedness of said company ratably.

In pursuance of said resolution, M. Beane, as vice president of said company, on the 18th day of March, 1889, executed a deed of trust, and acknowledged the same in accordance with the provisions and directions of said resolution, which was admitted to record on the same day in the clerk's office of the county court of said county.

On the 23d day of March, 1889, another meeting of the board of directors was held in the city of Parkersburg, at which said Beane, as such vice president, was authorized, empowered, and directed to execute another deed of assignment, conveying all the property of said company, of every kind, wherever situated, to R. B. Winkler, trustee, to secure the creditors of said company (1) the costs of executing said trusts and carrying out the same; (2) rent and royalty due the estate of John D. Lewis, amounting to five thousand and ten dollars; (3) debt to P. H. Noyes & Co., two thousand eight hundred and eighty three dollars and twenty one cents; (4) debt to Charleston National Bank, five hundred and fifty dollars; (5) all other indebtedness of said company ratably; and said Beane was authorized to sign the company's name and affix its corporate seal to said deed of assignment, and to acknowledge for record and deliver the same for and in behalf of said company.

In pursuance of said resolution said Beane, as vice president of said company, did on the 23d day of March, 1889, execute a deed of assignment of the property of said company to R. B. Winkler, trustee, which was acknowledged by him on the same day, and admitted to record in the clerk's office of the County Court of said county on the 25th day of March, 1888, which last-named deed purports to se-

cure (1) costs and expenses incurred in caring for property until said sale, including reasonable compensation to said trustee, and including, also, reasonable compensation to Knight & Couch, attorneys, for services in preparing deed of assignment and counsel; (2) rent and royalty then due the estate of John D. Lewis, deceased, amounting to five thousand and ten dollars; (3) debt to P. H. Noyes & Co., two thousand, eight hundred and eighty three dollars and twenty one cents; (4) debt to Charleston National Bank, five hundred and fifty dollars; (5) all other indebtedness of said company ratably, and without preference, setting forth a schedule of the creditors, and the amounts due them, respectively.

On the 26th day of March, 1889, A. L. and M. P. Ruffner, partners in trade under the firm name of Ruffner Bros., and W. A. Ellis, doing business as W. A. Ellis & Co., filed their bill in the Circuit Court of Kanawha county against said Welton Coal & Salt Company and others, attacking said first-named deed of assignment as being fraudulent and void; and after stating the manner in which the Welton Coal & Salt Co., was chartered, and the purposes for which said charter was obtained, they further allege, that shortly after said charter was issued, said M. Beane took charge of all the business thereof as superintendent; that said company leased said coal land from the heirs of John D. Lewis, deceased, for the purpose of mining coal therefrom; that said Beane became the owner of nearly all the stock of said company, and is yet the owner thereof; that said Beane continued to act as superintendent of said company, and had secured the confidence of the people to such an extent that said company, through him, became indebted in the aggregate in the sum of twenty thousand dollars, over five thousand dollars of which was claimed by him to be due as royalty; that, among others, the said company, through M. Beane, its superintendent, became indebted to said Ruffner Bros. in the sum of two thousand, two hundred and forty two dollars and thirty five cents, and to said W. A. Ellis & Co. in the sum of two hundred and forty dollars and twenty five cents; that on the 16th of March, 1889, said Beane had said resolution prepared by George S.

Couch, authorizing the execution of said deed of assignment of that date; that in said deed of trust, without any pretense that the same was authorized by said pretended resolution, there is included as the first lien in said deed a fee to Knight & Couch, attorneys, for drawing papers, and for any other services that they might render in winding up the affairs of said company, and that said pretended resolution provided for securing a debt to the Charleston National Bank, which debt was not provided for or secured in said deed, as required by said pretended resolution.

They allege that said debt of said Charleston National Bank was about five hundred and fifty dollars, and that said M. Beane took of the assets of the company to pay said debt, which had been so paid after the papers had been so prepared, but before said deed was executed. They charge, also, that there was never any notice of the meeting of the directors purporting to have been held on the 16th day of March, 1889, at the city of Parkersburgh, at which the said pretended resolution was adopted, and the president of the company never called any such meeting, or gave any notice of such meeting, nor did any person acting as president *pro tempore* call such meeting or give such notice ; that in fact no such meeting was held on the 16th day of March, 1889, and that in fact there was no record made of such meeting or resolution.

They charge that the writing of the said pretended resolution, and the writing of the deed at the same time, before any authority was pretended to have been given therefor, and procuring said resolutions to be so adopted, and said deed to be executed were all done for the purpose and the intent of defrauding, hindering, and delaying the creditors of said corporation, and especially the plaintiffs; that said company is insolvent, and was so when the said resolution was adopted and when said deed was executed; that Mr. Beane, who executed the deed for and on behalf of the said corporation, is a director in said company, and was at the time said resolution was prepared and said deed executed, and, as he claims, was vice president of said corporation, is the same Mr. Beane who, as said trust-deed shows, is a preferred creditor therein of said corporation to the amount

of nearly two thousand dollars; that he was present in the so-called meeting of the directors, if any such meeting was in fact held, and voted for the so-called resolution that required that he should be so preferred.

The plaintiffs also charge that by including the said Knight & Couch therein as preferred creditors, and giving the said fraudulent preference to the said Director and Vice President Beane, as against the other creditors of said defendant corporation, stamps the said deed as *prima facie* fraudulent and void.

Plaintiffs also charge that for the last several years the said Beane has almost exclusively attended to the business of the corporation himself, buying and selling property without rendering any account thereof to the board of directors, and that in fact there have been no meetings of the stockholders or board of directors for years, unless the so-called meeting held on the 16th of March, 1889, shall be considered a meeting, and that no records have been kept of any proceedings of either stockholders or directors of said corporation, and the defendant corporation, the directors, and said Beane, vice president, were called upon by plaintiffs to produce such records, if any there be.

They further charge that the directors did not appoint said Beane superintendent thereof, or prescribe his duties and compensation. They allege that the claim of said Beane, amounting to one thousand, nine hundred and fifty one dollars and sixty two cents, so preferred in said trust-deed, was false and fictitious, and that said company does not owe him that or any other sum ; that said Beane owned nearly all the stock, had entire control of the company, and was using it for his own benefit; and that he had no more right, under such circumstances, to charge for said services as against the creditors of the corporation, than an insolvent individual or firm would have to appropriate the funds of such individual or firm against the creditors of such individual or firm.

Plaintiffs also allege that said corporation is subject to chapter 53 of the Code of West Virginia ; that, by section 47 of that chapter, it is required that every corporation subject to that chapter shall have a board of directors,

who shall have power to do, or cause to be done, all things that are proper to be done by the corporation.

They also refer to the provisions of section 50 of that chapter, as to the mode of electing a president, and as to the appointment of a president *pro tem.;* to section 51, as to how meetings of the board may be required, and the place where they shall be held, and as to notice being given of special meetings ; to section 52, as to a record of their proceedings, and the manner in which they shall be kept, and that no member of the board should vote on a question in which he is interested otherwise than a stockholder, or be present at a meeting while the same is being considered ; to section 53 of the same chapter, which declares that the board of directors shall appoint such officers or agents of the corporation as they may deem proper, and prescribe their duties and compensation ; and to section 55, requiring that the board of directors shall be subject to such by-laws and regulations, not inconsistent with the laws of the state, as the stockholders may pass from time to time in general meeting.

They charge that the said three directors, if, indeed, they were directors—which plaintiffs deny—to wit, M. Beane, J. McKinny and N. L. Upson, have violated each of the provisions of the statute above set out, and that this action on the part of said Beane, McKinny, and Upson, and on the part of said corporation, was done to hinder, delay, and defraud the creditors of said corporation, and especially the plaintiffs; and being done by a director of the company, to secure a debt of the corporation to himself, the law stamps it as *prima facie* fraudulent and void as to the creditors of said corporation.

Plaintiffs charge that the original corporators never paid the one hundred thousand dollars, as stated in their agreement and the affidavit attached thereto, nor even ten *per cent.* thereof in money or its equivalent, as is very manifest from the fact that in less than six years from its organization it has become wholly insolvent, having but little property, and confessedly in debt about twenty thousand dollars; that the defendant C. C. Lewis, one of the heirs of John D. Lewis, an agent for all the heirs of John

D. Lewis, and managing their interests in their claim against the said corporation for royalty and rents, had notice of the fraud charged, and was present in the office of Knight & Couch, participating and advising with reference thereto ; and plaintiffs also allege that the defendants P. H. Noyes & Co. had notice of the fraud therein charged, because said C. C. Lewis, a member of said firm, was acting for and attending to the interests of said firm as aforesaid, at the office of Knight & Couch, at the time aforesaid; that unless said property is placed in the hands of a receiver, and the proceeds properly distributed under the direction of the court, it will be sold under the provisions of said fraudulent trust-deed, and the funds misappropriated.

They prayed that a receiver be appointed for said insolvent corporation, who should be required to give bond according to law, take charge of the porperty of said corporation, and sell the same under the directions of the court, and bring the proceeds thereof into court ; that said deed of March 16, 1889, be declared fraudulent as to the creditors of said corporation, and especially as to the claims of the plaintiffs ; and that out of the proceeds the claims of the plaintiff be first paid ; and for general relief.

On the 3d day of April, 1889, the plaintiffs filed an amended bill, in which they reiterate the allegations of their original bill and attack the said second deed of assignment as fraudulent and void—*First,* because said coal and salt company had no office in Parkersburgh at the time the resolution was passed authorizing its execution, said office having been abandoned when all of the property was conveyed to the trustee by said first deed, and because no such office was ever established in Parkersburgh by a proper resolution ; *secondly,* because C. C. Lewis, who represented the heirs of John D. Lewis, and was a member of the firm of P. H. Noyes & Co., had notice that plaintiffs would bring this suit, and said second deed was executed to correct the error committed in preferring the claim of M. Beane, who was superintendent, director and vice president of said company ; also because there was no notice of the directors' meeting at which said second deed was

directed to be executed, and because said second deed contains the same vice and fraud as the first one did in preferring a claim for which said Beane was solely responsible, alleging that there was no record made of the resolution authorizing said second deed to be made, and that Knight & Couch were preferred as creditors without any authority therefor.

They further allege that said second deed was void because said company exhausted its powers with reference to said property when the first deed was made; also because said deed was made without the consent or acquiescence of the trustee Winkler, and for the reason that said Beane purchased a large bill of goods from the plaintiffs Ruffner Bros. after he was contemplating said assignment, and he told M. P. Ruffner, one of the plaintiffs, that the only trouble was that P. H. Noyes & Co. wanted him to prefer them, and he did not wish to do it, as Ruffner Bros. had always been kind to him; and they allege that said last bill was purchased with the intention of defrauding them; and that C. C. Lewis had notice of the fraud in the assignment; and that there is not the amount of five thousand and ten dollars due on said rent; and call on said C. C. Lewis to disclose the true amount.

They pray that said Beane be required to produce all the books and papers of the Welton Coal & Salt Company in his possession; to state what amount of the stock of the Welton Coal & Salt Company he owns, and when the same was transferred to him; what moneys he has received for the said company, and the sources from whence received, since he has been acting as such superintendent; what amount of coal was shipped while he was superintendent, and whether in the name of the company or that of Beane & Armstrong, and what relations he had with W. D. Armstrong; where they procured the coal they shipped, and what became of the proceeds; and they pray that said deeds be set aside as fraudulent as to the creditors of said company; that a receiver may be appointed of the said defendant corporation; that the same may be sold, and the proceeds brought into court, and distributed according to law, and that the plaintiffs be first paid.

On the 17th day of April, 1889, the Welton Coal & Salt Company, Charles C. Lewis, M. Beane in his own right and as vice president, as superintendent, and as one of the directors of said corporation, R. B. Winkler, trustee, Knight & Couch, the Charleston National Bank, P. H. Noyes & Co., and N. L. Upson filed their separate answers to said original and amended bill, putting in issue every material allegation thereof; and the plaintiffs filed the affidavit of Okey Johnson ; and the defendants filed the affidavits of C. C. Lewis and M. Beane.

The cause was heard upon the motion for the appointment of a receiver; also upon the affidavit of William E. Chilton, filed with the petition of Kenna and Chilton; upon consideration whereof the court decreed that R. B. Winkler be appointed receiver of the property of said company, and he was directed to advertise and sell the same, either at public or private sale, after giving bond in the penalty of two thousand dollars, and was required to report his proceedings to court.

Numerous depositions were taken and filed in the cause by both plaintiffs and defendants, and on the 17th day of April, 1691, a decree was rendered in said cause, in which the court held that W. D. Lewis was entitled to the relief prayed for in his answer, to the extent of the proceeds of certain property sold by said special receiver, Winkler, which was included in a deed of trust dated the 3d day of July, 1884, and executed by the Welton Coal & Salt Company to H. D. Shrewsbury trustee, which proceeds amounted to six hundred and twenty three dollars and seventy five cents, and directed the same to be paid to said William D. Lewis.

On the same day a decree was rendered in said cause, in which the court held that said two deeds of assignment, the first executed on the 16th day of March, 1889, and the second the 23d day of March, 1889, were fraudulent, and were executed by said defendant the Welton Coal & Salt Company, with intent to defraud the plaintiffs and other creditors of said company, who did not accept said deeds ; and that the defendant C. C. Lewis and P. H. Noyes & Co., and other preferred creditors in said deeds, who did accept

the same, and each of them, had notice of said fraudulent intent; and set aside said deeds of assignment as to said creditors who did not accept the same; and after deducting certain costs and commissions and the sum of six hundred and twenty three dollars and seventy five cents, decreed to W. D. Lewis, as above stated, directed the residue to be applied—*first*, to the payment of the taxes on said land; *second*, to the claim of Ruffner Bros., amounting to two thousand, four hundred and ninety nine dollars and ten cents; *third*, to the claim of W. A. Ellis & Co., amounting to two hundred and seventy dollars and twenty eight cents; *fourth*, to the claim of Kenna & Chilton, amounting to seven hundred and one dollars and sixty cents; *fifth*, to the petitioners who joined with the plaintiffs in their demand in the order of filing their petitions; and any remaining sum should be applied *pro rata* among the other creditors of said Coal & Salt Company.

From this decree the appellants applied for and obtained this appeal.

The first error assigned by the appellants is that the court erred in setting aside said deeds, and each of them, and especially in so far as the debts of appellants were secured in said deeds. It is claimed that said Welton Coal & Salt Company committed a fraud in preferring the claim for rent or royalty due the heirs of John D. Lewis, and the debt due from it to P. H. Noyes & Co., and that C. C. Lewis, who acted as agent and trustee for said heirs, and who was a member of the firm of P. H. Noyes & Co., had notice of and participated in the fraud of said company in so preferring its said creditors.

It is also claimed that said deeds were fraudulent by reason of the fact that said deeds of assignment provided for the payment of certain fees of Knight & Couch, attorneys; and although said Knight & Couch, in their answer, state they performed certain services, and were entitled to a reasonable compensation therefor, and that they have no knowledge of any fraud in the transaction, said answer was replied to generally; and there appears to be no proof in the cause as to the value of said services, and the amount of said claim is indefinite and uncertain. It could, how-

ever, have been rendered certain by a reference to a commissioner.

It is, however, further contended that said deed of assignment is invalid by reason of the fact that the resolution directing the execution thereof did not direct the claim of Knight & Couch to be secured as a preferred claim in said deed. Even if the proposition so contended for was correct in point of law to such an extent as to invalidate said deed as to the claim of Knight & Couch, or so far as it created a lien in their favor, which is not here decided, we can see no good reason why the claims of the appellants and P. H. Noyes & Co. should be affected by that fact. At the time these deeds of assignment were executed a corporation had the right to prefer its creditors.

In the case of *Pyles* v. *Furniture Co.*, 30 W. Va. 123 (2 S. E. Rep. 909) point 5 of syllabus, this Court held that "there is nothing in the policy of our statutes which forbids an insolvent corporation to prefer its creditors."

In *Bank* v. *Whittle*, 78 Va. 737, it was held that the directors of an insolvent bank might make preferences among its creditors, and even in its own favor; that the act of February 13, 1837, did not apply to any corporation, except corporations for mining and manufacturing purposes, and with this exception, in Virginia, the law for many years has been that any corporation might prefer its creditors.

The act denying the right to mining and manufacturing companies to prefer a creditor was retained in our Code until 1863, when it was omitted. It was not only omitted from chapter 83 of the Acts of 1863, which re-enacts the law governing corporations, but section 18 of said chapter, by implication, repeals section 34 of chapter 57 of the Code of 1860, the conclusion of said section 18 reading as follows : "And, generally, it may do for the purposes for which it is incorporated, and in the transaction of its proper business, but subject to the restrictions and regulations herein contained, whatever would be lawful for a natural person to do." There being no question that a natural person, although insolvent, might prefer his creditors, it follows that a corporation, under this section, could do the same.

It is true that this Court held, in the case of *Livesay* v.

*Beard,* 22 W. Va. 585 (point 12 of the syllabus) that "a deed fraudulent in fact is void *in toto,* and can not stand as security for grantees who have notice of the fraud." Just here we may inquire, what fraud is attributable to the Welton Salt Company in executing the deed of trust or assignment which is complained of in the bill ? It could not be in securing to the heirs of John D. Lewis the rent or royalty which was due them for coal mined from the property, nor could it be in securing P. H. Noyes & Co. the amount of their claim for goods and merchandise sold it to enable said company to prosecute its mining operations. It is true the bill alleges that there was not so much as five thousand and ten dollars due on account of said rent, but the proof is clear and conclusive that said amount of rent was due. It is also shown by the evidence that the balance of account in favor of P. H. Noyes & Co. against said Coal & Salt Company was two thousand, eight hundred and eighty three dollars and twenty one cents. It is alleged that C. C. Lewis, who acted as agent and trustee for the heirs of said John D. Lewis, and who was a member of the firm of P. H. Noyes & Co., had notice of and participated in the fraud of said company in preferring its creditors. The debts secured by these deeds to these parties are in no manner shown to be fraudulent, but, on the contrary, are proven to be honest debts, lawfully created in the operation of said coal mine, the first named being for rent and enforceable by distress warrant; and if the property of said company, instead of consisting of mules, coal cars, barges, *etc.,* had by said company been converted into money, and said money had been used by them in paying said rent and said claim of P. H. Noyes & Co., without satisfying the claims of the other creditors, it could not be said that the payment of said claims was in any respect fraudulent. The debts secured being honest and free from fraud, if said company had the right to pay them notwithstanding the existence of its other indebtedness, it had surely the right to secure them ; otherwise it would have been fraudulent for such company to prefer its creditors; but, as we have seen in the case of *Pyles* v. *Furniture Co., supra,* "there is nothing in the policy of our statutes which forbids an insolvent corporation to

prefer its creditors." The fraud, then, if any existed, did not consist in the preference of these two claims.

It is, however, contended that because the claim of M. Beane for services was included in said first deed, he being a director and superintendent of said company, that fact made said deed fraudulent, and that C. C. Lewis having notice of said fraud, the deed was thereby vitiated, and could not stand as security for said rent and the P. H. Noyes & Co. debt; and while, as we have seen in the case of *Livesay* v. *Beard, supra,* this Court held that "a deed fraudulent in fact is void *in toto,* and can not stand as security for grantees who have notice of the fraud," yet, in the next point of the syllabus in the same case, it was held that "a deed to several grantees jointly, fraudulent in fact, it being proved that the grantor executed it with intent to defraud his creditors, will be void as to such grantees as had notice of the fraud, and may stand as security for the consideration paid by such grantees as had no notice of such fraud." JOHNSON, J., in delivering the opinion of the Court, on page 596 says: "Some of the grantees in a fraudulent deed may be protected, and others not. It may be good as to such grantees as had no notice of the fraud, and void as to those who had such notice."

In the case of *Skipwith's Ex'r* v. *Cunningham,* 8 Leigh, 293, TUCKER, P., delivering the opinion of the court, says: "But, be this as it may, I can not agree that all the creditors are to lose the benefit of this security for the payment of their debts, because an improper provision, deemed fraudulent by construction of law, has been inserted in the deed. * * * Where a deed is made for the security of various creditors whose claims are distinct and unmingled with each other, and where part are illegal and fraudulent and another part are fair and untainted with fraud, the security shall not be avoided as to the latter, provided they have given no aid in any way to the concoction of the fraud. A deed of that character ought to be considered distributively, and, while it is avoided in part, it should be effectuated as far as it is good. If it were otherwise, then a deed of trust to secure the payment of ninety nine just debts would be avoided by the fact that the hundredth was for usury or gaming," *etc.*

So, also, in the case of *Billups* v. *Sears*, 5 Gratt. 31, it was held: "A deed of trust executed in part to secure fraudulent debts, but in part to secure a *bona fide* debt, the *bona fide* creditor having no notice of the dishonest purpose on the part of the grantor, is a valid security for the *bona fide* debt.

Also in the case of *Gordon* v. *Cannon*, 18 Gratt. 387, Rives, J., in his opinion (page 423) says: "Actual fraud, within the cognizance of the parties, would vitiate the whole deed; but no principle of law or reason seems to me to inhibit the setting aside of an illegal, and therefore an inoperative, clause, at the same time that other parts of the deed are sustained. Even in the case of actual fraud affecting some of the debts secured by the deed, this court has declined to pronounce a conveyance thus tainted void as to a fair and *bona fide* creditor, having no notice of any dishonest purpose on the part of the grantor, so far as his indemnity was concerned."

In the case of *Cohn* v. *Ward*, 32 W. Va. 34 (9 S. E. Rep. 41) this Court held: "2. When in such case the conveyance is shown to be founded upon a valuable consideration, the burden of proving that the deed is fraudulent in fact rests upon the creditor assailing it. * * * 4. Where a trust-deed secures many debts in separate classes or to different persons, the simple fact that a part of the debts secured are shown to be invalid or voluntary will not make the deed invalid or voluntary—will not make the deed invalid as a security for other and *bona fide* debts secured therein."

Numerous other authorities might be quoted upon this branch of the case, but these are considered sufficient to show that, in a deed of trust like the one under consideration, although one of the debts secured may be tainted with fraud, or may for some cause be held illegal and invalid, the other debts therein secured shall not be thereby affected; if they are based upon a good and valid consideration, and the parties to whom they are payable have not participated in the fraud which renders said claims invalid, or had notice of the same.

In the case of *Harden* v. *Wagner*, 22 W. Va. 356 (ninth

point of syllabus) this Court held that the *onus probandi* is on him who alleges fraud; and, if the fraud is not strictly and clearly proved as it is alleged, relief can not be granted, although the party against whom relief is sought may not have been perfectly clear in his dealings; and although in the case of *Hope* v. *Salt Co.*, 25 W. Va. 789 (third point of syllabus) this Court held that "when a director of a corporation, in claiming to be a creditor thereof, has obtained from his codirectors a deed of trust or mortgage upon the corporate property, to the exclusion of other creditors, such transaction will be presumed to be fraudulent; such presumption may be rebutted by clear and convincing evidence that the same is fair and reasonable, and wholly free from all taint of fraud or unfairness;" yet point 5 of the same syllabus reads as follows: "A corporation may contract debts with its individual corporators, and it is as much its duty to pay or secure such debts as debts due to strangers; and the fact that a deed of trust has been given on the corporate property to secure such debts will not render it fraudulent, unless such fraudulent intent is shown."

In the Dartmouth College Case, Judge STORY said: "A corporation aggregate is an artificial person, existing in the contemplation of law, and endowed with certain powers and franchises, which, although they must be exercised through the medium of its natural members, are yet considered as subsisting in the corporation itself, as distinctly as if it were a real person;" and for this reason such a corporation may contract with them in the same manner as with strangers.

So far as the claim of Beane for services is concerned, the evidence shows it was an honest one; but as the weight of authority seems to be that the law regards the directors of an insolvent corporation as trustees for the benefit of the creditors, and to hold that there is no power in its directors to mortgage or convey the corporate property to themselves, or to secure to themselves a preference, and as we have arrived at the conclusion that the question as to whether the claims secured in said trust-deed are entitled to the preference therein given them must be considered

distributively, the fact that said trust-deed created no valid trust lien in favor of Beane would not affect the validity of the other liens.

Much has, however, been said in the brief of appellees upon the question as to the regularity of the meeting and proceedings of the directors of said company at the time said resolution purports to have been passed directing the execution of said deed—that is, the first deed—and many authorities have been cited to show that said proceedings were irregular and illegal; but this Court, in the case of *Fidelity Ins., T. & S. D. Co.* v. *Shenandoah Val. R. Co.*, 32 W. Va. 244 (9 S. E. Rep. 180) held: "1. Where the contract of a corporation purports to be sealed with its corporate seal, and it is proven to be signed by the proper agents of the corporation, the presumption is that the seal was affixed by the proper authority, and such contract will be held valid until the contrary is shown." "2. The presumption of authority to affix the corporate seal to a contract will not be overcome by the mere fact that no vote of the directors authorizing it is shown."

This ruling must eliminate from the case all discussion in reference to the question as to the regularity of the proceedings of the directors in authorizing the execution of said deed. The second deed must be considered as a ratification of the first, so far as it secures the royalty and the claim of P. H. Noyes & Co., and from that the claim of Beane for services is omitted.

It is, however, contended that the second deed is amenable to the same objection as the first, as it secured a claim for which said Beane was solely responsible. This fact, however, if it be a fact, I regard as immaterial, and of little practical importance in the determination of this case, for the reason that in both deeds the claims of Beane, the one for services and the one which it is said he is responsible for solely, are subsequent in point of priority to said claim of five thousand and ten dollars for royalty, and the claim of P. H. Noyes & Co. for two thousand eight hundred and eighty three dollars and twenty one cents, amounting in the aggregate to nearly eight thousand dollars, when the entire property was sold under decree of the court by the

receiver, and the gross amount received therefor was only four thousand four huundred and thirty seven dollars and fifty seven cents, not sufficient to pay the rent due, and said sale was confirmed by the court without exception.

An effort was made to show that C. C. Lewis, as agent for the heirs of John D. Lewis, and trustee, and as a member of the firm of P. H. Noyes & Co., had been guilty of some fraud in having these deeds executed in such a manner as to secure and prefer the claims in which he was interested; but we fail to perceive anything fraudulent in his acts in connection with the transaction. He used diligence in securing his claims, which any other business man would have done under the circumstances, and, if he was possessed of information which enabled him to effect that object, we see no good reason why he should have imparted it to the other creditors, when that course would in all probability have defeated his object; and, as we have seen that a corporation at that time had the right to prefer its creditors, no fraud can be attributed to the fact that they were so preferred.

For these reasons we are of opinion that neither of said deeds should have been held void *in toto*, but that they should have been held valid as to the claim for royalty in favor of the heirs of John Lewis and the firm of P. H. Noyes & Co., and the last one as to the debt of the Charleston National Bank for five hundred and fifty dollars; and for these reasons the decree complained of must be reversed, and the cause remanded to the Circuit Court of Kanawha county for further proceedings to be had therein, and the appellees must pay the costs of this appeal.

REVERSED. REMANDED.