# CHARLESTON

DEEPWATER COUNCIL, ETC. v. RENICK.

59 343
60 278

Submitted February 14, 1906.   Decided April 10, 1906.

1. CORPORATIONS—*Sale of Realty—Validity.*
   A corporation, duly incorporated under the provisions of chapter 55 of the Code, may sell real estate owned and held by it in its corporate name, without resort to a court proceeding under section 9 of chapter 57 of the Code.   (p. 346.)

2. SAME—*Deed—Validity.*
   A deed, which is not *ultra vires* as to a corporation, and which is executed in its corporate name and under its corporate seal, by its proper officers, and duly delivered, carries with it the presumption of authority in such officers to execute it and affix thereto the seal of the corporation.   (p. 347.)

3. DEEDS—*Fraud—Evidence.*
   When actual fraud is relied on to set aside a deed, the fraud must be clearly proved. This may be done by direct or by circumstantial evidence, or by both.   (p. 348.)

4. FRAUD—*Evidence.*
   Actual fraud cannot be established alone by proof of circumstances raising only a suspicion of fraud, but the evidence and circumstances must be of such character as to clearly establish such fraud.   (p. 350.)

5. CONTRACTS—*Cancellation—Inadequacy of Consideration.*
   Where parties, competent to contract, enter into a contract, it will not be set aside in a court of equity on the ground of inadequacy of consideration, unless the inadequacy be so gross as to shock the conscience and to amount to proof of fraud.   Courts of equity, as well as courts of law, act upon the ground that every person who is not, from his peculiar condition of circumstances, under disability, if entitled to dispose of his property in such manner and upon such terms as he pleases; and whether his bargains are wise, discreet and profitable, or otherwise, are considerations not for courts of justice, but for the party himself, to deliberate upon.   (p. 350.)

6. FRAUD—*Evidence—Inadequate Consideration.*
   Inadequacy of consideration, although not so gross as to shock the conscience and amount to proof of fraud, may nevertheless be considered with other evidence or circumstances in determining the question of fraud.   (p. 351.)

Appeal from Circuit Court, Fayette County.

Bill by the Deepwater Council, No 40, O. U. A. M. of Mt.

Carbon, against J. E. Renick.     Judgment for defendant, and plaintiff appeals.

*Affirmed.*

Dillon & Nuckolls, for appellant.

Payne & Hamilton and Brown, Jackson & Knight, for appellee. .

Cox, Judge:

On the 20th day of February, 1903, a deed, purporting to convey a certain lot of land near Mount Carbon in Fayette county, was made and executed in the name of Deepwater Council No. 40, Order United American Mechanics of Mount Carbon, and under its corporate seal, by F. M. Bone, its councilor, and John Nichols, its secretary, and delivered to J. E. Renick, the grantee named therein, and duly admitted to record on the 24th of February, 1903. Deepwater Council No. 40, Order United American Mechanics of Mount Carbon, is a corporation, duly incorporated under the provisions of chapter 55 of the Code, and, for convenience, will be hereafter referred to as the "Lodge." On the first day of June, 1903, the Lodge instituted this suit in equity, in the circuit court of Fayette county, against J. E. Renick, to set aside said deed upon two grounds: first, want of authority on the part of Bone and Nichols, officers of the Lodge, to make the deed; second, actual fraud in the procurement of the deed. The bill alleged willingness on the part of the Lodge to return the purchase money paid by Renick. Renick, by answer, denied substantially all the material allegations of the bill in relation to want of authority on the part of the officers making the deed, and in relation to actual fraud in its procurement. Many depositions were taken. Upon final hearing, the circuit court of Fayette county entered a decree dismissing the plaintiff's bill. From this decree the Lodge appealed.

The deed did not purport to convey all the property of the Lodge, and thus practically terminate its existence, but only a specific parcel of real estate. The act of conveying this real estate was not *ultra vires*, so far as the Lodge was concerned, if the act was in fact the act of the Lodge; because the very purpose of such corporation, as expressed in the act under which it was incorporated, is to "hold, lease, sell and convey real property," etc. Section 2, chapter 55, Code.

Section 8 of said chapter provides that such a corporation may make and adopt all necessary by-laws and regulations, not inconsistent with the Constitution and laws of the United States and of this State, to enable it to conduct and pursue its business and purpose; and that, except where it is otherwise provided, such corporation shall be subject to, and governed by, chapters 52, 53 and 54 of the Code. These chapters relate to joint stock companies.

Section 42, chapter 53, Code, provides that the number of stockholders, or amount of stock, necessary to constitute a quorum at a meeting of the stockholders, and the mode of transacting business at such meeting, may be prescribed by the by-laws.

Section 49, chapter 53, Code, provides that there shall be a board of directors for every corporation subject to that chapter, who shall have power to do, or cause to be done, all things that are proper to be done by the corporation; and that a majority of the board shall constitute a quorum, unless otherwise provided in the by-laws.

Section 55, chapter 53, Code, provides that the board of directors, in the exercise of their powers, shall be subject to such by-laws and regulations, not inconsistent with the laws of this State, as the stockholders may pass from time to time in general meeting.

These provisions of the statutes in relation to joint stock companies, govern the Lodge, so far as applicable to it.

Usually the members of a Lodge are not, in a strict sense, stockholders of the corporation. They have no stock which they may assign to others. They are simply members, and as such entitled to participate in the business of the corporation, in many respects in like manner as stockholders in a joint stock company, except that such members stand on an equality as to each other. They are entitled to a voice in the proceedings as individual members, and not according to the amount of stock held by them, as in joint stock companies.

We shall discuss the grounds alleged for setting aside this deed, in the order named; first, want of authority in the officers to make the deed. Under this ground, it is contended that the real estate of the Lodge could not be sold, without

resort to a court proceeding under section 9, chapter 57, Code. In our judgment, this section does not apply. At the time the deed mentioned was made, this real estate was owned and held by the Lodge in its corporate name, and not by a trustee or trustees for its use. Said section 9 provides for a sale by order of court, upon the application of a board of trustees holding the property sought to be sold. Under section 6 of that chapter, the trustees mentioned in section 3 of the same chapter are made a corporation. It seems clear to us that section 9 does not refer to or include an active corporation chartered under chapter 55, authorized and competent to transact its own business without the intervention of trustees or of a court order.

It is contended that the officers who made the deed were without authority, because that authority had not been conferred upon them by a proper meeting of the members of the Lodge or by its board of directors.

The deed is regular upon its face, under seal of the Lodge, signed and acknowledged by its chief officers, delivered to the grantee, and by him caused to be recorded. Under these circumstances, authority on the part of these officers to make the deed will be presumed, and the burden is on the Lodge to show want of authority. *Fidelity Co.* v. *R. R. Co.*, 32 W. Va. 244; *Boyce* v. *Montauk Coal Co.*, 37 W. Va. 91; *Ruffner Bros.* v. *Welton Salt Co.*, 36 W. Va. 244; 4 Thomp. Corp., section 5029; Cook Corp., section 725; 10 Cyc. 1149.

It may be claimed that these officers were not the proper officers to sign the deed and to place thereon the seal of the corporation. They were the chief officers of the Lodge, and acted as such without objection at the meeting of the board of directors hereafter mentioned, and were in our judgment the proper officers to execute the deed on behalf of the Lodge.

The question for determination is: Has the presumption of authority on the part of these officers to make the deed been overthrown by the facts appearing in this record? It was shown that the Lodge had a board of directors, composed of five members, viz.: Bone, councilor, Nichols, secretary, Stapleton, Griffith and Craddock. The by-laws were not produced or copied in the record, although demanded by the appellee. The evidence is ample that by-laws of the Lodge

were in existence. The evidence shows that a regular meeting of the members of the Lodge was held on the 18th of February, 1903, at which a quorum for the transaction of business was present; that the Lodge was indebted to Hopkins in something more than $600, which indebtedness had existed for some time. At this meeting, a letter from Hopkins urging payment was read by the secretary. A motion was adopted in relation to selling the real estate in controversy. Renick, the purchaser, was present, and offered to loan to the Lodge money with which to pay the Hopkins debt, or to buy the real estate at the price of $1,000, the Lodge to retain the use of the second story or lodge room for lodge purposes, and for the purpose of renting it to other lodges or societies, for the period of five years. The minutes of the meeting of February 18th show the following: "On motion of H. Stapleton that Deepwater Council No. 40 sell their lot and house or hall to J. E. Renick. Motion carried unanimously. Renick being present he stated to the Lodge that the condition on which he would purchase the building. He said he would give the Council $1,000.00 for their property, and lease them the upper story for five years, to have full control of the upper part of the building for lodge purposes and to rent to other lodges and get the full amount of rent and be at no expense for any repairs. The Council resolved that they would sell, and instructed the recording secretary to notify the other two members of the board to be present at J. E. Renick's for the purpose above stated." These minutes were signed by F. M. Bone, councilor, and John Nichols, secretary. The minutes of a subsequent meeting of the members of the Lodge, held on the 25th of February, 1903, show: "Records of previous Council read and approved." These minutes were also signed by F. M. Bone, councilor, and John Nichols, recording secretary.

On the 20th day of February, 1903, there was a meeting of the board of directors, at which three of the five members were present, Griffith and Craddock being absent. At this meeting, the deed mentioned was prepared, executed and delivered. The transaction appears to have been agreeable to all the members of the board present, until it came to signing the deed, when Stapleton seemed to become offended at being told that it was unnecessary for him to sign it, and

that it was only necessary for Bone and Nichols as chief of-
ficers to sign the deed.   There is no claim that the deed was
made upon considerations or terms differing substantially
from the proposition of purchase made by Renick at the meet-
ing of the Lodge, or as contained in the minutes of that meet-
ing as recorded, although the language of the minutes is
misrecited in the deed.   Much oral evidence was adduced as
to what action was taken by the Lodge at its meeting on the
18th, and as to the correctness of the minutes of that meet-
ing.   This evidence is conflicting.   If no recorded minutes
of that meeting existed, and if it were attempted to make up
true minutes from this oral evidence, we apprehend that the
attempt would be without accurate result.   At the meeting
of the 25th, the minutes of the meeting of the 18th were ob-
jected to by Griffith, who was not present at the meeting of
the 18th or at the directors' meeting of the 20th, and perhaps
by others.   The evidence of the witnesses as to the character of
the objection or objections made to the minutes of the meeting
of the 18th is also conflicting.   No evidence discloses any af-
firmative action by the Lodge, in relation to the objection to
the minutes of the meeting of the 18th, at the meeting of the
25th.   No motion was adopted or action taken rejecting the
minutes, or in way disapproving them.   The objections made to
them by an individual member or members seem to have ended
without action by the Lodge.   There is also conflict in the
evidence as to who prepared the minutes of the meeting of
the 25th; but, without endeavoring to reconcile this conflict,
it is undisputed that they were signed by Bone, councilor,
and Nichols, secretary, without any act of the Lodge disap-
proving them.   The minutes of the meeting of the 25th show
the following, about which there is no controversy in the evi-
dence:   "On motion of C. C. Griffith that the Council recon-
sider the transaction of sale of the property to J. E. Renick.
Motion carried."   This minute goes very far to sustain the
contention of the appellee that the Lodge had a previous
transaction in relation to a sale of property to Renick; other-
wise, there would have been nothing to reconsider. Upon the
evidence and facts appearing, we think the recorded minutes of
the meeting of the 18th must be taken as showing the action
of the Lodge in relation to the sale of the property in con-
troversy.

It is contended that the record discloses that no legal action

was taken by the board of directors authorizing the making of the deed. Of the five members composing the board of directors, three were present at the meeting at which the deed was prepared and executed. This meeting was held on the 20th of February. Notice of this meeting was sent by Nichols, secretary, by mail, on the 19th of February to the absentees, and in reasonable time for them to attend the meeting if they received the notice by due course of mail.. The evidence shows, without contradiction, that Craddock, one of the absentees, said that he had received the notice but could not attend. The evidence of Griffith, the other absentee, was taken on behalf of the Lodge. After carefully examing his evidence, we are unable to say that it shows that he did not receive the notice in time to attend the meeting. He was asked when he received the notice, and answered: "On the 19th of February." This witness seems to have had in mind the two meetings, one by the Lodge on the 18th and the other by the board of directors on the 20th, at neither of which was he present, and to have confused the two meetings in some of his answers.

It is also contended that the notice itself was insufficient, because it notified the members of a meeting to make arrangements to raise the money owing to Hopkins, and not to make sale of the property. The raising of money appears to have been uppermost in the mind of the secretary, who gave the notice, and, indeed, the raising of the money to pay the Hopkins debt seems to have been the reason which prompted the action of the Lodge at its meeting on the 18th of February. One way to accomplish that purpose was to sell the property. The by-laws of the Lodge and the rules and regulations of its board of directors, in relation to notice of meetings of its board, do not appear in the record. We cannot say that the notice did not meet every requirement of such by-laws, rules or regulations; and it was incumbent on the Lodge to show that the action of the board was illegal, else the presumption that the deed was with authority must prevail. It does not appear under the facts presented that the action of the board was illegal.

The record disclosing the action of the members of the Lodge in regular meeting assembled, and also the action of the board of directors, it is unnecessary to discuss the ques-

tion whether or not the action of both bodies was necessary, or, if not, the action of which body was proper and binding on the Lodge. Bearing upon this question, however, see *Gashwiler* v. *Willis*, 33 Cal. 11; 3 Thomp. Corp. section 3977; section 83 Acts 1901; *Fidelity Co.* v. *R. R. Co.*, *supra; Burr's Exors.* v. *McDonald*, 3 Grat. 215.

This brings us to the consideration of the other ground alleged for setting aside the deed—actual fraud in its procurement. Where actual fraud is relied on to set aside a deed, it must be clearly proved. This may be done by direct or by circumstantial evidence, or by both. *Board of Trustees* v. *Blair*, 45 W. Va. 812; *Greer* v. *O'Brien*, 36 W. Va. 277; *Parker* v. *Valentine*, 27 W. Va. 677; *Frank* v. *Zeigler*, 46 W. Va. 614.

Inadequacy of consideration is alleged. The estimates of the witnesses of the cost of the property in controversy, including lot and improvements, range from $2,200 to $2,500. The estimates of the witnesses of the actual value of the property range from $1,500 to $3,500, the greater number of the witnesses placing it at $3,000. The estimates of actual value seem to be based principally upon the present rental value under existing conditions. The upper story or lodge room had at the time of the sale a rental value of about $288 per year, exclusive of use by the Lodge for lodge purposes. The first story had a rental value of about $200 per year. The terms of purchase by Renick were $1,000, the Lodge retaining the second story with privilege to rent it to others for the period of five years. The rental value to the Lodge of this story, exclusive of use by the Lodge, for the five year period would amount to about $1,500, thus making a total consideration of about $2,500 which the Lodge received or will receive. No actual offer or proposition to purchase this property at the time it was sold is shown, other than the proposition by Renick. The Lodge was indebted to Hopkins in excess of $600. This $600 debt had been carried by the Lodge for some time. It had not grown less in amount. The membership of the Lodge in good standing and paying dues had greatly decreased. Under these circumstances, the sale was made to Renick. These parties were competent to contract, and entered into the contract. It will not be set aside in a court of equity on the ground

of inadequacy of consideration, unless the inadequacy be so gross as to shock the conscience and to amount to proof of fraud. Courts of equity, as well as courts of law, act upon the ground that every person who is not, from his peculiar condition or circumstances, under disability, is entitled to dispose of his property in such manner and upon such terms as he chooses, and whether his bargains are wise, discreet and profitable, or otherwise, are considerations not for courts of justice, but for the party himself, to deliberate upon. 1 Story, Eq., section 244; *Jones* v. *Degge,* 84 Va. 685; *Lowther Oil Co.* v. *Guthrie,* 52 W. Va. 88; *Wood* v. *Harmison,* 41 W. Va. 376; *Reese* v. *Kittle,* 56 W. Va. 269.

It is clear that the deed cannot be set aside on the ground of inadequacy of consideration. This is conceded by the brief of counsel for the Lodge. Inadequacy of consideration, although not so gross as to shock the conscience or amount to proof of fraud, may nevertheless be considered with other evidence or circumstances in determining the question of fraud. 14 Am. & Eng. Enc. Law 516. What evidence in this record shows actual fraud in the procurement of the deed mentioned? The bill alleges that the "deed was obtained by said J. E. Renick, with the assistance of John Nichols, for the purpose of obtaining the title to plaintiff's property without paying a just and adequate consideration for the same, and thereby defrauding plaintiff of its property." Where is the proof of this allegation? We are unable to point to it in this record.

It is said that John Nichols, secretary, did not enter correctly the minutes of the meetings of the Lodge held on the 18th and 25th of February; but, as we have seen, those minutes stand duly signed as the minutes of the Lodge unimpeached by action of the Lodge. It is also said that Nichols urged haste in consummating the sale, and declared on the day of the directors' meeting that something would have to be done, or that the property would go for $600. The acts and conduct of Nichols, secretary, may have manifested a desire to speedily consummate the sale, laboring perhaps under the fear of dire consequences from the enforcement of the Hopkins debt. It is not shown that the acts and conduct of Nichols were prompted by an improper motive, or were not in good faith. In the matter of haste,

Nichols does not stand alone.    Other members of the Lodge, and perhaps all the members present at the meeting of February 18th, manifested a like desire to consummate a sale. The date of the meeting of the board of directors was fixed for the 20th, at the meeting of the Lodge on the 18th, not by Nichols, but by another member.    We cannot impute improper motives to Nichols from his conduct and declarations, or to the other members of the Lodge from their conduct and declarations.

We have examined this record for proof of fraud on the part of Renick, and find nothing substantial or conclusive in that regard.    One witness was produced who said that he was asked by Renick to "talk in favor of him getting" the property, but no terms were mentioned, no price named, at that time.    It is not shown that this witness acted according to that request.    On the contrary, he said that he did not.    The evidence of this witness, at most, cannot be construed as raising more than a mere suspicion of fraud, if it is even sufficient for that purpose.    Fraud cannot be established alone by proof of circumstances raising only a suspicion of fraud; but the evidence and circumstances must be of such character as to clearly establish the fraud.    1 Story Eq., section 190.

The circuit court weighed the evidence and circumstances appearing in this record, and determined the conflicts therein in favor of the appellee.    The decree appealed from carries with it the presumption of correctness.    Having examined this record, we are clearly of the opinion that the circuit court was fully justified in its determination of this case. The action of the Lodge in selling the property was perhaps hasty.    It may have been an instance of acting in haste and repenting at leisure; but we find no sufficient evidence to sustain the allegations of fraud in the transaction.

The decree of the circuit court is affirmed.

*Affirmed.*